OLIVER D. DUNHAM, Plaintiff in error, who was Defendant below, *v.* CLAYTON ROGERS, Defendant in error, who was Plaintiff below.

A compensation for services in the form of a commission on profits, creates no such interest in the concern as constitutes partnership.

*Held,* therefore, that an agreement by a manufacturer to furnish wooden handles made to order, to a country merchant, at a tariff of prices to be paid out of the store, on the proceeds of the handles, the manufacturer finding the labour and stuff, and receiving a further compensation for skill and the rent of the store-house, in the form of a commission of fifty per cent. on the net profits of the whole, does not constitute a partnership.

*Held,* also, that if there ever was a partnership in the store, and in the handles furnished, it would not extend to the procurement of the stuff, and, consequently, that the merchant would not be liable to a creditor of the manufacturer for the price of it.

ERROR to the Common Pleas of Wayne county.

This was an appeal by Dunham from the judgment of a justice of the peace, before whom Rogers brought suit against Dunham for the value of certain lumber, sold and appropriated to the use of the defendant.

The evidence upon the trial below, somewhat curtailed, was this. On the part of the plaintiff,

*Robert Spencer* testified as follows:—"Plaintiff delivered ash plank at Bronson's shop. They were worked up in the shop. I suppose Dunham had the handles made out of them. I put the amount down on Bronson's book, which I handed in to Dunham's store. The plank were used the same season they were delivered. I suppose Bronson carried on the shop."

*Cross-examined.*—"Some of the plank came before Dunham came there. Cannot say whether *all* or not. When Dunham came, Bronson was carrying on the shop. I don't know that Dunham employed a single hand, or had any thing to do with it. Bronson directed us in our operations. I traded with Dunham first on my own private account. It was charged to me. The amount was charged over to Bronson. Dunham never hired me. The store was in Bronson's

hands before Dunham came. Don't know where Bronson kept his book. Bronson let me have the book before Dunham came, and I kept it in the store, which was a convenient place. I kept the book myself till I got through with it, and then left it in the store."

*Re-examined.*—"I worked there till into July last. I had what trade I wanted out of the store. Bronson paid me a few dollars since in money. I did not say any thing to Dunham about paying me."

*Sillick Weed* testified :—" One Stephenson unloaded a load of lumber that they called Rogers'. Bronson employed me, and settled with me, and gave me credit on Dunham's book, where my account was kept. I said to Dunham, 'I want to trade some, and I want to know whether what I work will turn on my account?' He replied, 'What you work shall turn on your account.' There was a balance due me, and when we settled Dunham paid it.

"In the course of the season that I was working there, in 1841 or 2, Bronson says, 'Rogers has forbid my using those plank till he has his pay for them.' Dunham replies, 'I have a note against him.' "

*Cross-examined.*—"I traded on my own account, in the first place, in the store. Bronson gave me a credit in the store. I settled for my work with Bronson, and he gave me a credit in the store. Dunham never employed me to work. Bronson carried in my account. Bronson took direction and carried on the shop. Dunham paid me the balance. I kept my own account of work. Dunham made no terms with me."

*Alva W. Norton* testified :—"I dealt with Dunham in ash plank; I think it was in 1842. Dunham credits me $12 per M. After I had made my arrangement with Dunham, I asked him if I should haul on; he wanted I should hold up. Said he had bought 50,000 feet already. Bronson and I counted out the lumber, and fixed the price, and he agreed to see me paid. I understood him that he was to carry on the plank and shovel-handle business. First told me he had not made up his mind. Dunham afterwards said he had made up his mind to go in for it; said he was going into the business; he had hired Bronson."

*Cross-examined.*—"Dunham never said any thing but that he was going to hire Bronson. Bronson had said he would be responsible to me. What Dunham said to me was before he went into business. Cannot say whether it was one or two months. Dunham said he would not satisfy any claim I had against Bronson. Bronson was to count out the lumber and fix on the price."

*David H. Peck* testified :—In 1842 Rogers hauled quite a number of loads. Rogers and I got out lumber at one time. Dunham paid

me. I hauled after Rogers did. All the accounts I saw were in the store. I traded it out."

*Cross-examined.*—"I drew mine two weeks after Rogers drew his. Bronson and I fixed the price. I spoke to Bronson about the lumber first. Bronson says, 'We don't pay any money for lumber, but pay out of the store.' I cannot tell how long Dunham had been there. I drew in June. Dunham agreed to take all the lumber I had."

*Seth Benedict* testified:—"I drove team for Bronson. I knew that Rogers drew lumber there. It was in April, 1842. Dunham came there 1st June. 'The lumber was worked up in the shop in the course of the summer. Bronson supplied the shop. Dunham paid for it and had the handles. Bronson conducted the shop altogether. Bronson carried it on before and after Dunham came, and I saw no difference. Bronson's store-house and Dunham's goods."

*Cross-examined.*—"I traded with Dunham, and it was charged to me, and when I settled with Bronson it was charged on the book. I think that Dunham had nothing to do with the hands. I cannot tell whether he charged over to Bronson."

*Edwin Hayden* testified:—"Dunham said what lumber he bought he paid for. I called on him for the balance due me for work. Dunham did not like to pay it, but finally paid me."

*F. T. Hobbs* testified:—"Rogers drew plank there. He brought some, I think, after Dunham came; am not certain. The plank were drawn and used up in the shop the latter part of summer. I heard Rogers tell Bronson he did not want the plank used till he got his pay for them."

*Virgil Grenell* testified:—"I furnished some plank for the shop after Dunham opened his store. Dunham told me he was going to buy plank. I got my pay of Dunham in goods."

*Ralph Case* testified:—"While Dunham was there, the forepart of summer, I agreed with Dunham to let him have plank. I got the pay, but never furnished the plank."

*Elsworth Mapes* testified:—"This suit was tried before me. Rogers insisted that he had drawn some plank there, and they were worked up. Dunham said Rogers was in a hurry for his pay; that he had sold the handles in Boston and got no pay. When he got his pay he was willing to pay for the plank."

*Cross-examined.*—"I heard something said about an order. Dunham said that an order was drawn on him by Bronson for these plank. Rogers contended that the order was to apply on a demand Dunham had against him, but Dunham said it was not so. Dunham thought there was a doubt about collecting the debt in Boston. There was

some conversation that if, on settlement by Dunham with Bronson, there was a balance in his hands, he would pay the order; and if he collected the debt in Boston, there was a prospect of such balance."

Plaintiff closed, and the defendant, to support the issues on his part, gave testimony as follows:

*Simon G. Throop* testified:—" Dunham talked about the action; thought Rogers was precipitate. Dunham insisted that he was not liable till he had received returns from the sales. Dunham said the order was to be paid when he received the proceeds of those sales. Dunham did not agree that he was liable in any other shape than through the order."

The defendant then gave in evidence an agreement, of which the following is a copy, to wit:

" An agreement made and executed this 7th day of June, A. D. 1842, between Levi Bronson, of, &c., of the one part, and O. D. Dunham of, &c., of the other part; WITNESSETH, for and in consideration hereinafter mentioned, covenants and agrees to let and lease unto the said Dunham, the store-house in the village of Prompton, belonging to the said Bronson, and the unenclosed land in and around the same, for the purpose of piling lumber, for one year from the date hereof, with the privilege of having the same two or three years at the election of the said Dunham. And the said Bronson agrees that during all the time said Dunham shall continue to keep the store above named, said Bronson will furnish lumber and manufacture for the said Dunham good merchantable shovel and other handles, at the following prices:

D. Manure Fork Handles, at Honesdale, at 52 cents per dozen.

| | | | |
|---|---|---|---|
| D. Shovel | " | " | 42 " |
| Long Straight | " | " | 33 " |
| Hoe | " | " | |

And to receive pay, as far as practicable in payment of handles, &c., out of said Dunham's store in goods at customary retailing prices; and whatever may not be paid in that way, to be paid out of the avails or proceeds of said handles by said Dunham.

" Said Bronson agrees to devote his time to the making and manufacturing said handles in the proportion and manner as said Dunham shall direct.

" The said Dunham, in consideration of the foregoing premises, agrees to purchase a stock of goods, and put into said store, to the amount of fifteen hundred or two thousand dollars, and replenish the same from time to time, as he may deem proper, and carry on said store.

" And as an additional compensation for the services and skill of said Bronson, in making and manufacturing said handles, and for the rent of said store and land, said Dunham will, upon closing up his business, after deducting interest upon the capital stock he may furnish in said business, and all expenses incident thereto, pay to the said Bronson a commission of fifty per cent. on the net profits arising from the same.

" The said Bronson to take goods on hand at cost, if required by said Dunham, if there be any thing his due. And the said Dunham reserves to himself the right to discontinue the business, and annulling this contract at any time he may deem proper.

" In witness whereof the parties to these presents have hereunto set their hands and seals the day and year aforementioned.

" Witness :                              LEVI BRONSON,    [Seal.]
" CHARLES FARNHAM.              '          O. D. DUNHAM.    [Seal.]"

Levi Bronson testified :—" The agreement of 7th June, 1842, was executed at the time it bears date. Dunham came to Prompton to do business after the date of the agreement. He came there, I think, in the month of June, with his goods. I think the plank were all delivered before Dunham came. I carried on the shop, and contracted generally for the lumber. Dunham bought some. He was not under obligation to furnish me plank. There was no other arrangement between us, about plank or handles, than what appears on the paper. I carried on the shop. Any plank that he purchased he charged to me. It was not his business, but mine, to furnish the shop. Rogers came there to contract with me for lumber in the winter previous to Dunham's coming. I made a bargain with him for plank; to pay him the money when the canal opened. Rogers furnished the plank in pursuance of the arrangement. It was before the canal opened. All that he furnished was in pursuance of that arrangement. While he was hauling the plank he said he was to have twelve dollars a thousand. Afterwards he claimed fourteen dollars if I used them. I did not use them; the plank lay there. I went to the city and came home, and was not prepared to pay for the plank. I objected to fourteen dollars per thousand. He said if I worked them I must allow him fourteen dollars a thousand. The plank were worked up in my absence. Rogers and I settled about the plank after Dunham had removed his store, or very near the time. Rogers came to me and brought the amount of the account, and called the plank twelve dollars a thousand. Wanted an order on Dunham, and I gave it to him. The order was conditional. I asked Rogers if Dunham would accept the order. He said he thought Dunham would. I think I told him

I had nothing in Dunham's hands, to draw directly on him, but thought I should have on closing up the business, and gave him an order to that effect."

*Cross-examined.*——"I had some plank when Dunham came there; don't know the quantity. I might have had from five to twenty thousand. I bought all I could find to buy and pay in goods, and I suppose he did the same.

"I should think all the plank were not paid for by Dunham, but there were plank I paid for when plank was due me. There was no bargain except that contract. When I told Dunham that Rogers would not have the plank used, or did not like it after it was used, Dunham said he had a note against Rogers. When Dunham bought lumber I might have used his name to signify how much there was of it. Dunham's books would show credits to others of the amount charged to me. I made bargains with people, without reference to Dunham. I gave other orders on Dunham prior to this of Rogers. I think the Rogers' ash plank was laid on my own land, and not on that leased to Dunham."

The court below (Jessup, President) charged the jury, who found for the plaintiff, and the defendant, excepting to the charge, made the following assignment of error:

"1. The court erred in charging the jury, that if they should believe, from all the evidence in the case, that the plank were used by direction of Dunham, or that he assumed to arrange the amount due for them, with Rogers, by the way of the note, the plaintiff was entitled to recover the value of the plank in this suit.

"2. The court erred in charging the jury that, under the written agreement, there was a mutual liability to loss, and a mutual chance at obtaining a profit; and if so, they were partners, and that the plank were used in the joint enterprise, and that thus the partnership became liable for them.

"3. The court erred in charging the jury, that if they find in the evidence that the plank were used in manufacturing the handles, under the arrangement made by Dunham and Bronson, without actual sale by Rogers to either of them, they should find for the plaintiff."

*Cooper*, for plaintiff in error, contended, that the rule, that all who participate in profits are liable as partners, is subject to many exceptions. To this point he cited Muzzy *v.* Whitney, 10 Johns. 226, and Heckert *v.* Fegely, 6 Watts & Serg. 139, 143.

A clerk in a grocery store, at a fixed salary and a commission of

seven per cent. on the profits, is not a partner.    Miller *v.* Bartlett and another, 15 Serg. & Rawle, 137.

Where a share of the profits is given as a payment for labour, it will not constitute a partnership.    Collyer on Partnership, 14, 43, 44, 45, 46.    For the general doctrine upon the subject of partnership, he cited Haskell *v.* Blanchard, 4 East, 144; 5th ed. of Chitty on Contracts, 248, and Collyer, as above referred to.

*Collins*, contrà, argued that there was some evidence of a sale of the plank to Dunham by Rogers, and of his use or employment of them in the enterprise; and if so, the amount of the evidence would be for the jury, and therefore the first assignment of errors is not sustained.

The legal construction of the article on which the enterprise rested will raise a partnership.    The object evidently was to unite their credit, labour, and capital, in about equal sums, and to conduct the business of manufacturing handles, through the aid of a store of goods for their common profit, and with a mutual liability to lose.    If so, they are partners.    6 Serg. & Rawle, 337; Chitty on Contracts, 232, 233, 240, 245.

The plank were used by Bronson without being purchased by him, and with the consent of Dunham, and brought into the common enterprise.    If so, as they went to increase the fund, the partners were liable for them in trover.    We might waive the tort, and sue on a quantum meruit, and recover their value against one of the partners, if he did not plead in abatement.    This is not denied, but conceded, on the other side, if the facts prove a partnership, as contended for by us.

The opinion of the court was delivered by GIBSON, C. J.

It is not alleged that this lumber was sold immediately to Dunham, and as it was furnished to Bronson and used by him, if Dunham is not liable for the price of it as Bronson's partner, he is not liable for it at all.    Do the terms of their agreement make him liable for Bronson's purchases to third persons?    Bronson let his storehouse, with the unenclosed ground, to Dunham, for the purposes of a store and lumber yard; and agreed to furnish him wooden handles for shovels and other implements, made to order, out of Bronson's stuff, and to be paid for, according to a tariff of prices, out of the store or the proceeds of the handles; while Dunham agreed to stock the store and conduct the business of it.    So far the agreement discloses no feature of partnership; but in further compensation of Bronson's labour, skill, and the

rent of the storehouse, Dunham agreed to allow him a commission of fifty per cent. on the net profits of the whole. Now, it has been so often and so invariably ruled in England and America, that a commission on profits is not such an interest in the concern as constitutes partnership, that the point is at rest. What staggers the mind, in this instance, is the apparent shallowness of the distinction, when it is considered that a commission of fifty per cent. is no more nor less than an equal division of the profits; but it must not be forgotten that the distinction is an arbitrary one, resting on authority, not principle; and that, whatever be the proportion, the relation produced by a compensation in the form of a commission is in every instance the same.

But, by the terms of the contract, Bronson, and not Dunham, was to procure and pay for the stuff; and they were not to be partners in that part of the business. This provision, I admit, would be inoperative against strangers, if the parties had held themselves out to the public as partners, both in buying and selling; but assuming, for the moment, that there was indeed a partnership in the handles when furnished, and in the store when stocked with goods, yet it is to be borne in mind that the handles, as well as the store-goods, were to be put into the concern as separate contributions to the joint-stock; and that, as the stuff for the handles was to be procured by Bronson, it was, consequently, to be paid for by him, just as the store-goods were to be procured and paid for by Dunham, having been purchased on separate account. There may be a partnership for selling, and not for buying; or, for buying, and not for selling; or, for both buying and selling, which is the most usual: as, if several put separate quantities of wheat into a common stock, to be ground into flour and sold on joint account; or agree to buy jointly, and divide the article when bought; or agree to buy and sell on joint account. In the first case, each would be liable for his own purchases only; but in the second and third cases, each would be liable for the whole. Now, if there were any partnership in this instance, it would be of the first class; and in any view of the case, the defendant would not be liable.

Judgment reversed, and venire de novo awarded.