John Krall *v.* Jacob Forney, John Atkins and William Atkins, trading as Atkins & Bro., and Samuel E. Fox, Appellants.

*Partnership—Definition of partnership.*

A partnership is a contract relation between persons who have combined their labor or skill in a joint enterprise or business for the purpose of joint profit.

*Partnership—An agreement construed not to constitute a partnership— Accounting—Equity.*

On a bill in equity for a partnership accounting, it appeared that the

plaintiff and the three defendants had entered into a contract in writing with B., whom they desired to help in starting business, by which they agreed to employ B. and appoint him agent, and to furnish him $2,000. They were to be the owners of the property purchased by him, and the property which he manufactured. B. was to be paid out of the profits solely, and to be responsible for all losses. His employers were to have power to annul the agreement at any time. The testimony of all the parties was in effect that no partnership was intended to be formed. Plaintiff sold a large number of cattle, and, after B.'s insolvency, contended that the defendants should account to him as a partner for a proportionate share of the purchase money. *Held*, (1) that the agreement created no partnership either in fact or in law as between the parties themselves; (2) that even if the agreement had constituted a partnership, plaintiff's relation to the partnership was merely that of a creditor; his remedy was at law, and not by bill in equity for an account.

Argued Feb. 16, 1897. Appeal, No. 551, Jan. T., 1896, by defendants, from decree of C. P. Lebanon Co., Equity Docket 1894, No. 2, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Reversed.

Bill in equity for a partnership accounting. Before EHR-GOOD, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* among others was decree in favor of the plaintiff.

· *Thomas H. Capp*, with him *George B. Schock*, for appellants.— The agreement did not constitute a partnership: Lindley on Partnership, *7; 3 Kent's Com., *24; Story on Partnership, sec. 2; Hallstead's App., 157 Pa. 59; 17 Am. & Eng. Ency. of Law, 828; Pott v. Eyton, 3 Manning, Granger & Scott, 39; Com. v. Arnheim, 3 Pa. Superior Ct. 104; Grove's App., 176 Pa. 354; Walker v. Tupper, 152 Pa. 1.

Where the accounts are all on one side, and no discovery is sought, equity will not entertain jurisdiction: Appeal of Passayunk Bldg. Assn., 83 Pa. 441; Grubb's App., 90 Pa. 228; Paton v. Clark, 156 Pa. 49; Fowle v. Lawrason, 5 Peters, 495.

Mistake in any instrument may be rectified when it clearly appears from satisfactory evidence that it was reduced to writing in terms not conformable to the real intention of the parties; Gower v. Sterner, 2 Wharton, 75; Lauchner v. Rex, 20 Pa. 464;

Snyder v. May & Klose, 19 Pa. 235; Breneiser v. Davis, 134 Pa. 1; Huss v. Morris, 63 Pa. 367; Aldridge v. Eshleman, 46 Pa. 420; Hollenback's App., 121 Pa. 322; Yost v. Mensch, 141 Pa. 73; Honesdale Glass Co. v. Storms, 125 Pa. 268; Pyroleum Appliance Co. v. Hardware Co., 169 Pa. 440; Bank v. Telephone Co., 150 Pa. 36; Russell's App., 75 Pa. 269; Kilduffe v. Maitland, 30 W. N. C. 46; Bishop v. Reed, 3 W. & S. 261.

*Howard C. Shirk*, with him *J. M. Funck*, for appellee.—The proportions in which partners are respectively entitled are determined by the original terms of their contract; or in the absence of any express declaration on the point, by the reasonable presumption from the circumstances of the case: Adams' Equity (8th ed.), 243.

In the absence of any stipulation as to the division of the profits of a partnership, the law divides them equally: Jones v. Jones, 1 Ired. Eq. 332; Honore v. Colmesnil, 1 J. J. Marsh. 506; Worthy v. Brower, 93 N. C. 344; 1 Parsons on Contracts (8th ed.), *157; Oppenheimer v. Clemmons, 18 Fed. Rep. 886; Story's Eq. Jur. (13th ed.), 672.

One partner cannot sue his copartners in at action at law, except in account render, for or about a partnership adventure, unless the parties have settled their accounts and struck a balance, or the partnership was limited to a single transaction: Ozeas v. Johnson, 1 Binney, 191; McFadden v. Hunt, 5 W. & S. 468; Hall v. Logan, 34 Pa. 331; Leidy v. Messinger, 71 Pa. 177; Crow v. Green, 111 Pa. 637; Murray v. Herrick, 171 Pa. 21.

To reform or impeach a written instrument by parol upon the ground of fraud, accident or mistake, the evidence must be clear, precise and indubitable, and must relate to the time when the writing was executed: Boyertown National Bank v. Hartman, 147 Pa. 558; Thomas & Son v. Loose, Seaman & Co., 114 Pa. 35; Murray v. R. R., 103 Pa. 37; Spencer v. Colt, 89 Pa. 314.

OPINION BY MR. JUSTICE DEAN, July 15, 1897:

On November 13, 1889, Jacob Forney, Samuel E. Fox, Atkins & Brother and John Krall, this plaintiff, as parties of the first part, the other three of them being these defendants, and

Aaron Brubacher, as party of the second part, entered into an agreement as follows :

" The said parties of the first part agree to employ the said Brubacher to carry on the butchering business at his shop in Cornwall Township, Lebanon County, Pa., hereby constituting and appointing him as their agent, and agree to advance him money for said purpose as may be required, not exceeding two thousand dollars ($2,000). That the parties of the first part shall and are to be the exclusive owners of the property purchased, or its transformation into bolognas, or in whatever shape it may be made, including the cattle or steers purchased by said Brubacher. That the said Brubacher shall pay the money so advanced from time to time, shall render us a statement, and take an inventory of what stock he has whenever required. That said Brubacher is to be paid out of the profits solely, and shall be responsible for any and all losses on the sales he makes, hereby giving our agent power and authority to do what may be necessary to carry on said business as our agent, and hereby ratifying what he must necessarily do in the premises to carry on said business, and continue until this agreement is revoked and annulled."

The parties of the first part raised the $2,000 by indorsing for Brubacher a note to that amount, which was discounted by a bank, the money paid to him, and he commenced the business of butchering, which he continued for a period of nearly three years. In this time he had done, in the aggregate, a very considerable business, but it proved unsuccessful, he becoming embarrassed financially ; he then delivered his stock on hand to defendants, who made sale of it and applied the proceeds to payment of the $2,000 note on which Brubacher had paid part, and the balance had been renewed from time to time, defendants continuing as indorsers. When his business was closed Brubacher was largely in debt, not only on the balance yet due on the $2,000 note, but to other parties, among them this plaintiff, Krall, to whom he owed $1,574.81, a balance on the purchase of a lot of cattle ; also $142.55, amount of a note with interest. Krall's sale of cattle to Brubacher during the three years aggregated over $7,000, all of which had been paid except the two sums mentioned. Krall, alleging the agreement to which he was a party constituted a partnership, brought this

bill for an account against his alleged copartners. The court below determined the agreement created a partnership; that the partnership, consisting of the four partners, owed Krall, with interest, $1,717.36, and that each should pay to Krall $429.34, or one fourth of the whole amount, and each pay one fourth the costs. From that decree defendants, the three other alleged partners appeal. Several errors are assigned, the material ones being: 1. The court erred in deciding the agreement was a partnership agreement. 2. In not deciding that equity had no jurisdiction, because the transactions of Krall, even if there was a partnership, were between him as an individual and the partnership, constituting the mere relation of debtor and creditor, and involving no rights as partners.

It is somewhat difficult to determine from what the parties have expressed in the agreement their legal relation; they, and the attorney who drew it, acknowledged that, although they knew what they intended to say, they did not know at the time the agreement was executed what, by its terms, they had agreed to do. Krall, the plaintiff, testifies: " I signed without much meaning, and didn't know what it meant." Brubacher, the party of the second part, testifies, when asked if the agreement had been read to him before signing: " I can't say whether he read the whole paper, but I did not understand the half he did read." Lantz, a member of the bar, who drew the agreement, testifies, in substance, that he made a mistake in expressing the intention of the parties; that his idea was to make them secure to the extent of the $2,000 advanced, by giving them a title to the property and business of Brubacher. He declined to say, when on the stand, just what construction should be given what he did write. Fox, one of the defendants, testifies: " When this paper was ready, I went up to the 'squire's to sign the paper, got the paper up, and could not read it very well; looked over it a little bit, in fact, I hadn't time to read it. I asked the 'squire, ' what is this paper.' He said, ' for $2,000, four of you men.' I signed that paper." Atkins, another of defendants, says he read the first part of the agreement, and if he had taken time, he might have got the meaning, but the 'squire told him, " it was the paper to be signed to secure the $2,000," and then he signed it. Forney testifies he signed it supposing it was a collateral security for the loan of $2,000. These are all the

parties who affixed their signatures, and the attorney who drew it. Not one of them positively knew or understood the expressed purport of the paper; not one of them intended, either in fact or by construction, to form a partnership, and appoint Brubacher their agent. Every one, Krall, the plaintiff, as well, testifies the intention was to aid Brubacher to start business by raising for him $2,000; as security for this loan they tried to retain a right of possession in the business property; the word " agent " was inserted at the suggestion of Lantz, the attorney, who thought that would protect the property from other creditors of Brubacher. If anything is clear from the testimony of the parties to the writing, and those having any connection with or knowledge of it, it was not intended to be a contract or partnership, in fact. Nor can we agree with the learned judge of the court below that it was one in law. Parties may so act, or hold themselves out to the public, that the law will hold them answerable as partners, although as between themselves, they are not partners. But this is where the rights of third parties are involved. As 'between the parties to the agreement does the contract constitute a partnership? They agree to employ Brubacher to carry on the butchering business, and appoint him agent; further, agree to furnish him $2,000; they are to be the owners of the property purchased by him, and the prepared meats manufactured by him; he is to be paid out of the profits solely, and to be responsible for all losses; his employers to have power to annul the agreement at any time. The plain implication is Brubacher was to enjoy all the profits, and it is expressly stipulated he is to pay all losses. There have been many definitions of a partnership; this court, in Hallstead's Appeal, 157 Pa. 59, opinion by our Brother WILLIAMS, adopts Story's definition: " A contract relation between persons who have combined their labor or skill in a joint enterprise or business for the purpose of joint profit." Every element of a partnership embraced in this definition is negatived by the agreement before us. In Walker v. Tupper, 152 Pa. 1, opinion by our Brother MITCHELL, it is said, " No general definition of partnership has yet been given which applies without qualification to all the infinite variety of business arrangements in this commercial age, but an essential element, universally conceded, is, participation in profits as such. But even this does not necessarily create a partnership."

Here, in no event, were the parties to share in profits, and they expressly stipulated against a liability for losses. They contemplated the possible loss of their $2,000, and attempted to make some provision for this by the assertion of title to the property purchased by Brubacher. But the writing as between themselves did not create a partnership, whatever may be its construction as to creditors of Brubacher, who were strangers to it. Taking the ambiguous writing, the surroundings of the parties, their vague testimony, we can glean from all pretty certainly this truth: Brubacher had failed shortly before; he was anxious to carry on business, but was wholly without means; they were friends of his and, at his. solicitation, generously agreed to advance him $2,000. As some sort of security, it was agreed they should have title to the business property, and have the right to take possession when they thought proper. They were joint lenders of the $2,000; Brubacher was their bailee of the property. In no contingency did either one of the four intend to put in peril more than $500, the one fourth of the $2,000. This is shown by the manifest preponderance of the testimony. No one thought otherwise until after the business was a failure. Brubacher probably expresses the truth exactly, as notice his testimony: " Q. Was it your idea they would have to pay for everything you bought in this business? A. No, not in the beginning, until after some people told me so."

This plaintiff, one of the joint lenders or sureties, now, on the assumption that they were partners, seeks to recoup his individual loss from his alleged copartners. There was no partnership in law or in fact, and therefore the bill cannot be maintained by him as a partner for an accounting.

But, even assuming a partnership existed, his debt was not contracted as a partner. He does not allege he advanced to the partnership more than his share of the capital, or has paid more than his share of the debts, or that his partners have retained more than their share of the profits. His averment, in substance, is that he, John Krall, an individual cattle dealer, sold to the partnership a lot of cattle, at a certain price, and it, the partnership, refuses to pay him. Wherein is his right as a partner affected by such a contention? It is a simple contract debt for a round sum. No equities of the partners, as such, are to be worked out, which require the intervention of a court of equity.

His bill does not even expressly aver a partnership; is almost in form a declaration of assumpsit. Equity has for that reason no jurisdiction.

Both of the appellant's assignments of error are sustained and the decree of the court below is reversed, costs to be paid by appellee.