# Kaufmann, Appellant, *v.* Kaufmann.

*Partnership—Purchase of deceased partner's interest—Appraisement of value of interest—Equity—Pleading—Demurrer.*

Where articles of copartnership provide that in case of the death of one of the partners, the survivors shall have the option to purchase the deceased partner's interest at a valuation to be ascertained in a manner specifically set forth in the articles, a court of equity has no power to change the method of valuation merely because the good will of the business has enormously increased in value since the date of the articles, and because the method of valuation therein prescribed would lead to inequitable results.

Where articles of copartnership provide that surviving partners shall have the option to purchase and take over the interest of a deceased partner in a manner specified, and, upon the death of one of the partners, the surviving partners take over the deceased's interest in the way provided by the articles, a demurrer to a bill in equity charging them with having arbitrarily, and without right and unjustly seized upon the interest of the deceased, does not admit any illegal conduct on the part of the defendants, inasmuch as the averment in the bill is but an inference on the part of the plaintiffs that the defendants had acted illegally.

A demurrer admits the facts fairly pleaded, but it does not admit argumentative conclusions or doubtful inferences from undisputed facts.

*Partnership—Participation in profits—Contribution of capital—Compensation for services.*

A mere participation in the profits of a business will not make the parties partners inter sese, whatever it may do as to third persons unless they so intended.

A share in the profits of a business as a compensation for services does not constitute the person receiving such share a partner in the business.

Where a partnership, consisting of four persons, enters into an agreement in writing with one of its employees, by which the latter is to continue in its employment, and is to receive "as salary for each and every year" an amount equal to a certain percentage of the net profits of the business, and the employee is also to deposit a sum stated with the firm which by the express terms of the agreement is not to be a contribution to capital, and is to be returned to him on the happening of certain events, the employee does not by such an agreement become a partner in the business.

Where a bill in equity attempts to establish a partnership among the defendants, and the bill charges that certain of the defendants had

made advances to the business in the nature of contribution to capital, a demurrer to the bill does not admit the truth of such an averment, where it appears from the papers annexed to the bill that the moneys contributed were to be mere deposits, and not contributions to the capital.

Argued Feb. 3, 1908.   Appeal, No. 213, Oct. T., 1907, by plaintiff, from decree of C. P. No. 1, Allegheny Co., March T., 1907, No. 211, dismissing bill in equity in case of Augusta Kaufmann, Executrix, and Alfred D. Kaufmann and Raymond M. Kaufmann, Executors of the last Will and Testament of Jacob Kaufmann, deceased, v. Isaac Kaufmann et al., individually and as partners who survived Jacob Kaufmann, deceased, late partners as Kaufmann Brothers.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction.   Before MACFARLANE, J.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in sustaining the demurrer and dismissing the bill.

*D. T. Watson* and *John G. Johnson*, with them *John M. Freeman*, for appellants.—The demurrer admitted all the material facts of the bill to be true: Bussier v. Weekey, 4 Pa. Superior Ct. 69 ; Philadelphia v. Gas Works, 12 W. N. C. 477 ; Angle v. Chicago, etc., Ry. Co., 151 U. S. 1 (14 Sup. Ct. Repr. 240); Bitting's App., 105 Pa. 517 ; Henry v. Black, 210 Pa. 245 ; United States v. Des Moines Nav., etc., Co., 142 U. S. 510 (12 Sup. Ct. Repr. 308).

On the death of Jacob Kaufmann the title to his one-fourth interest in Kaufmann Brothers vested in his executors, and it is only through them that Isaac, Morris and Henry can procure title to the same: Bungard v. Miller, 5 Sadler, 122 ; Edwards v. Hoopes, 2 Wharton, 420 ; De Haven v. Anjer, 4 Sadler, 183 ; Ex parte Wood, L. R. 10 Ch. Div. 554.

The agreement of 1897 (even if it remains unchanged by the seven agreements of 1903 and 1905) did not vest in Isaac, Morris and Henry on Jacob's death his, Jacob's, interest in the firm of Kaufmann Brothers, nor under said agreement is it obligatory upon the executors of Jacob to sell said interest on

the terms set forth in the 13th and 14th paragraphs to Isaac, Morris and Henry : Maryland v. R. R. Co., 89 U. S. 105 ; Frazier v. Monroe, 72 Pa. 166.

The agreements of 1903 and 1905 under the facts alleged in the bill created a new partnership and dissolved the old partnership of Kaufmann Brothers and, therefore, the provisions of articles 13 and 14 of the agreement of 1897 are no longer binding: Wessels v. Weiss, 166 Pa. 490 ; Scott v. Kennedy, 201 Pa. 462 ; Poundstone v. Hamburger, 139 Pa. 319.

The present good will of the firm of Kaufmann Brothers not being within the contemplation of the partners when the agreement of 1897 was made, and not being included within its provisions, is, under the averments of the bill, owned, one-fourth by Jacob's executors, and they are not bound to sell his interest in it valued as provided in the 13th paragraph of the 1897 agreement: Mechanics' Bank of Alexandria v. Lynn, 26 U. S. 376 ; McCarty v. Kyle, 4 Cold. (Tenn.) 348 ; Flannagan's Est., 10 Kulp, 179.

If the parties agree upon the sort of arrangement or relation in fact which the law terms a partnership, they are partners even though they expressly declare in the articles that they are not partners: Spaulding v. Stubbings, 86 Wis. 255 (56 N. W. Repr. 469) ; Poundstone v. Hamburger, 139 Pa. 319 ; Lintner v. Millikin, 47 Ill. 178 ; Chapman v. Hughes, 104 Cal. 302 ; Loomis v. Marshall, 12 Conn. 69 ; Beecher v. Bush, 45 Mich. 188 ; Webster v. Clark, 34 Fla. 637 (16 So. Repr. 601); Jones v. Davies, 60 Kan. 309 ; Adam v. Newbigging, L. R. 13 App. Cas. 308 ; Moore v. Davies, L. R. 11 Ch. D. 261.

Where a servant who shares in the profits of the firm has also contributed part of the capital of the business, this tends strongly to show that he is interested in the partnership as a principal: Lindley on Partnership, page 44 ; Fougner v. Bank, 141 Ill. 124 (30 N. E. Repr. 442) ; Hackett v. Stanley, 115 N. Y. 625 (22 N. E. Repr. 745).

Parties need not agree to share losses in order to constitute a partnership: Reade v. Bentley, 4 Kay & J. 656 ; Fougner v. Bank, 141 Ill. 124 (30 N. E. Repr. 442) ; Bond v. Pittard, 3 M. & W. 357 ; Bucknam v. Barnum, 15 Conn. 67 ; Kayser v. Maugham, 8 Colo. 232, 237 (6 Pac. Repr. 803) ; Brigham v. Dana, 29 Vt. 1, 9 ; Ex parte Langdale, 18 Ves. 300.

*W. B. Rodgers* and *Samuel Dickson*, with them *Joseph Stadtfeld*, for appellees.—The agreements of 1903 and 1905 are employment contracts and did not create a copartnership between the parties thereto, nor change, supply or supersede the agreement of 1897. · The deposits of money did not create a copartnership : Hart v. Kelley, 83 Pa. 286 ; Gill v. Kuhn, 6 S. & R. 333.

Compensation based on profits does not create a partnership : Edwards v. Tracy, 62 Pa. 374; Hazard v. Hazard, 1 Story, 371; Gill v. Kuhn, 6 S. & R. 333; Walker v. Tupper, 152 Pa. 1 ; Heckert v. Fegely, 6 W. & S. 139.

The agreement of 1903 and 1905 did not supersede the agreement of 1897 : Featherstonhaugh v. Fenwick, 17 Vesey Jr. 298.

The agreement of 1897 was not abrogated in any respect by the subsequent growth and development of the business : Marble Co. v. Ripley, 77 U. S. 339 ; Sullivan v. Jacob, 1 Molloy, 472.

The agreement of 1897 is in force, and, under the 13th and 14th paragraphs thereof, upon the death of Jacob, his partnership interest vested in the surviving partners, and the estate thereupon became entitled to payment in the manner and on the terms fixed in said agreement, which payment the bill does not charge was not offered with security, as agreed upon, but, on the contrary, the whole structure of the bill admits that this was done. The demurrer admits all facts properly pleaded, but it does not admit conclusions drawn by the pleader from the facts stated by him : Dillon v. Barnard, 88 U. S. 430; Seitz v. Refrigerating Co., 141 U. S. 510 (12 Sup. Ct. Repr. 46).

OPINION BY MR. JUSTICE BROWN, June 23, 1908 :

If this bill had been filed against Isaac, Morris and Henry Kaufmann alone, as surviving partners of the firm of Kaufmann Brothers, with no reference to the contracts entered into by that firm with the seven other appellees, it could hardly be seriously contended that the articles of copartnership of the firm of Kaufmann Brothers, attached to and to be regarded as part of the bill, would not be conclusive of the right of the surviving partners to settle with the personal representatives of their deceased partner in the mode therein described.

Jacob, Isaac, Morris and Henry Kaufmann had, for some

years prior to 1897, been engaged in business as partners, dealing " chiefly in men's wear and but slightly in other branches." Up to November 24, 1897, there was no written agreement between them, but on that day they entered into written articles of agreement, stating in detail the terms of their copartnership. The thirteenth clause of the said agreement, to evade which this bill was filed, is as follows : " In the event of the death of any one or more of said copartners, the deceased party's estate shall not continue to retain the decedent's partnership interest, but the said interest shall, within thirty days after such death, be considered as absolutely withdrawn and severed from the business of said firm, and the surviving partners shall purchase all the right, title and interest therein of the decedent for a sum equal to his share of the net assets of the firm, at the inventory last preceding the said death, minus such amounts as he may have drawn in cash or merchandise and plus such amounts as he may have contributed over and above his share, as set forth in article two of this agreement, from the time of his death back to the last preceding inventory ; and further plus an amount equal to ten per cent (10) of the aforesaid decedent's partnership interest, in consideration of the decedent's part of the good will of this firm. Provided, however, that the said last preceding inventory shows the net profits of this firm, for the one year preceding such inventory, to have been not less than ten per cent (10) of the said total capital, as set forth in the second section of this agreement ; and in case such profits shall have been less than 10 per cent, as last aforesaid, then the decedent's estate shall be entitled to and receive only one hundred ($100) dollars in consideration for the decedent's part of the good will of the firm." The fourteenth clause provides how payment is to be made by the surviving partners for their purchase of a deceased partner's interest in the business. The terms of payment on such a purchase differ from those on a purchase of the interest of a withdrawing or retiring member of the firm.

The appellants do not aver that the three surviving partners of the firm of Kaufmann Brothers—Isaac, Morris and Henry—have refused to settle with them and account in accordance with the written articles of copartnership. On the

contrary, the admission in the tenth paragraph of the bill is that these three appellees concede the right of the appellants to receive from them $288,750 as the value of Jacob's fourth interest in the partnership. There is no averment that this sum is not all that ought to be paid for that interest under the thirteenth clause of the agreement, which provides how its value is to be ascertained; but a mere claim is made that Jacob's interest in the partnership was worth more at the time of his death, that it was then " fairly worth $1,750,000," as the good will of the firm had largely increased from 1897, and, at the time of his death, " was worth the sum of at least $6,000,000." According to this, the assets of the firm, exclusive of the good will, were worth, at the time Jacob died, $1,000,000, and in the sum of $288,750, which the three surviving partners are willing to pay the appellants, there is included an item of $38,750 for the interest of the deceased in the good will; and this is all the appellees are required to pay for it, if its value was arrived at in the way pointed out by the deceased partner himself. There is no averment that the value was not so arrived at, and if Jacob's estate, in the judgment of those now representing it, is not getting all that his interest in the good will may be actually worth, it is, as the learned judge below aptly said, " because he so agreed."

The bill recites at length the growth and increase of the business of the firm of Kaufmann Brothers from 1897 to Jacob's death in 1905, and, in the oral argument of counsel for appellants, this was given as a reason why Jacob's estate should not be held to the agreement made under different business conditions. There is no averment that, as the business grew and expanded, he ever asked for a change or modification of the clause providing how his interest should pass to his brothers in the event of his death. The agreement remained unchanged and unmodified, just as it was written, until he died, and it became operative. The business grew and expanded, as the partners manifestly hoped when they put their compact of copartnership into writing, but because it may have grown even beyond their expectations the terms of their partnership were not changed nor their rights as partners affected. Until they themselves changed their agreement it continued to be the law of their partnership existence, though the number of their de-

livery wagons increased from ten, in 1897, to fifty-four, in 1905, their employees in the shipping room from six to twenty, their total floor space from 200,388 feet to 465,400, and their business was divided into fifty-two departments at the time of Jacob's death. The increase of the business of the firm went on under the eyes of each of the partners, but the partnership which had existed prior to 1897, and which they continued by their agreement of November 24th of that year, continued until Jacob's death, unchanged by any other agreement between them. Though they made no change in their written agreement, the court below was asked by this bill to change it, or to hold that it ought not now, in equity, to be regarded as binding.

The thirteenth clause of the agreement is so plain that it would be the work of supererogation to demonstrate that, upon the death of Jacob, his one-fourth interest in the firm vested in the survivors, subject to their paying for the same a sum to be ascertained in the mode fixed by the parties. This clause was as fair to each of the four parties as it was to the other three, and we repeat as to it what we said of another agreement between partners, stipulating that, on the death of one the survivor should have the right to purchase his interest in the business at a valuation provided for by them in their agreement : " It was a value fixed irrespectively of the actual value, which would change from year to year, and which they considered it just that the survivor should pay and the estate of his deceased partner receive. Neither could know to whom the option to purchase would fall ; and if, during the running of the agreement, because of large additions or deductions, the price might become inequitable, either party had the remedy in his own hands, as without his assent they could not be made. The agreement was in force over eleven years before the death of one of the parties. . . . We are left then to the construction of the agreement as it is written. Considering the condition of the property at the time, the mutual interest of the parties and the end they had in view, their desire to make certain the price at which the survivor could take and their knowledge that the cost would not be a criterion of the value, we think that they meant to say that the valuation of $25,000 was to remain, subject only to the conditions which they im-

posed, the fixed value for the purpose of the agreement. What is of much more and of primary importance in interpretation, we find that this is what they did say. We see no want of equity in the agreement, nor any hardship to result from its performance which should lead a chancellor to deny the prayer for specific performance. There was no inequality of terms; it applied to both alike, and the advantage to be gained by the survivor was not more certain than that which would result to the estate of the deceased:" Rohrbacher's Estate, 168 Pa. 158.

There is an averment in the bill that the appellees—Isaac, Morris and Henry Kaufmann—" have arbitrarily and without right and unjustly and unfairly seized upon the said one fourth interest of the said Jacob Kaufmann in the said firm, and forcibly seek to retain possession thereof as the sole absolute owners thereof;" and it is contended that the demurrer admits this to be true. This averment is but an inference on the part of the appellants that Isaac, Morris and Henry have arbitrarily, without right, and unjustly and unfairly, taken Jacob's one-fourth interest in the firm. The thirteenth clause of the agreement provides how they may take it, and the averment is not that they have taken it in violation of that clause. While all facts fairly pleaded are admitted by a demurrer, it does not admit argumentative conclusions or doubtful inferences from undisputed facts: Getty et al. v. Pennsylvania Institution for the Instruction of the Blind, 194 Pa. 571. " The averments of the bill as to the purport and meaning of the provisions of the indenture, the object of their insertion in the instrument, and the obligations they imposed upon the corporation and the trustees, and the rights they conferred upon the plaintiff when his contract was approved, are not admitted by the demurrer. These are matters of legal inference, conclusions of law upon the construction of the indenture, and are open to contention, a copy of the instrument itself being annexed to the bill, and, therefore, before the court for inspection. A demurrer only admits facts well pleaded; it does not admit matters of inference and argument, however clearly stated; it does not admit, for example, the accuracy of an alleged construction of an instrument when the instrument itself is set forth in the bill, or a copy is annexed, against a construction required by its terms;

nor the correctness of the ascription of a purpose to the parties when not justified by the language used. The several averments of the plaintiff in the bill as to his understanding of his rights, and of the liabilities and duties of others under the contract, can, therefore, exert no influence upon the mind of the court in the disposition of the demurrer. This is not the case of a bill to set aside or reform the contract as not expressing the actual intention of the parties. It is a case where the contention arises solely upon the meaning of the indenture in its bearing upon the contract, and that must be ascertained by applying to its language the ordinary rules of interpretation:" Dillon v. Barnard, 21 Wallace, 430.

In 1903, Kaufmann Brothers entered into a contract with each of the following persons, who were then in their employ and all of whom are made defendants in this bill: Morris Baer, Julius Baer, Max L. Blum, Ludwig Kaufmann, Theodore Kaufmann, Nathan Kaufmann and Hugo Baum. The contracts are identical, except as to the percentages to be received by each employee from the profits of the business, the duties to be performed and the amount to be deposited by him with the firm. The one entered into with Ludwig Kaufmann is annexed to and made part of the bill. Each of these contracts was supplemented by another, entered into in May, 1905. The supplements are identical, except as to the percentages to be received and the amounts to be deposited. The one entered into with Ludwig Kaufmann is also attached to and made part of the bill.

The averment in the sixth paragraph of the bill is that after the "seven agreements of 1903 were duly made, executed and delivered, the business of Kaufmann Brothers was continued and carried on by the said four Kaufmanns, and the seven named individuals, . . . . that the said seven agreements of 1903 and 1905 changed, supplied and superseded the original agreement of 1897, . . . . that by the said agreements of 1903 and 1905, the old partnership of Kaufmann Brothers was dissolved and a new partnership with additional members and added restrictions and provisions was organized." Another averment in the bill is that "each one of the said seven individuals agreed to advance, and did advance, to the capital of the firm" a stated sum, varying from $35,250, advanced by

Julius Baer and Nathan Kaufmann, respectively, to $120,000, advanced by Morris Baer. If these averments as to contributions to the capital of the firm are simply what the complainants regard as the effect of the seven contracts, the demurrer does not admit them to be true, and we must, therefore, turn to the contracts themselves to interpret them and declare what their effect was on the partnership of Kaufmann Brothers.

It is first to be noted that each contract is between " Jacob Kaufmann, Isaac Kaufmann, Morris Kaufmann and Henry Kaufmann, parties doing business as Kaufmann Brothers,". of the first part, and one of their employees, of the second part, and the very first clause shows that the party of the second part is to continue " to give his services to the parties of the first part," to the Kaufmann Brothers—" in the same capacity as heretofore "—an employee. In consideration of these services the agreement proceeds in the second clause to provide what the party of the second part shall receive from the party of the first part. It is not a participation in the assets and business of the firm of Kaufmann Brothers, but payment by them to each of said parties of a sum " as salary for each and every year " equal to a certain percentage of the net profits of " their business "—Kaufmann Brothers' business—" the parties of the first part." ·The agreement then describes in detail how the percentage of the profits is to be ascertained. With these details we need not burden this opinion. Nothing in the provision that each of the seven employees is to receive for his services a certain proportion of the net profits constitutes him a partner as to Kaufmann Brothers themselves, in whose services he had been and in whose services he was to continue as an employee. " That there is a distinction between partnership as respects the public, and partnership as respects the parties, is an elementary principle of this branch of the law, so plain that its only difficulty is in its application to particular cases. Where the agreement is silent, there is often room for doubt, as to the precise relation in which the parties stand to each other, and then a joint interest in the stock is considered a discriminative circumstance; but where they explicitly declare there is to be no partnership, it is unnecessary to inquire further; for among themselves, the law permits them to determine their respective interests by their own stipulations;

it is a matter with which third persons have no concern. . . .
The contracts of men are laws prescribed by themselves to
govern their transactions with each other, which, as long as
they interfere not with morality, or with the interests of third
persons, are of conclusive obligation on the immediate parties
to them:" Gill v. Kuhn, 6 S. & R. 333.   "A mere participa-
tion in the profits will not make the parties partners inter
sese, whatever it may do as to third persons, unless they so
intend it.   If A. agrees to give B. one-third of the profits of a
particular transaction in business, for his labor and services
therein, that may make both liable to third persons as part-
ners; but not as between themselves:" Hazard v. Hazard, 1
Story, 371.   "While a right to share in the profits may con-
stitute a partner, a commission equal to such a share, as a com-
pensation for services, does not: Ex parte Hamper, 17 Ves.
404; Ex parte Watson, 19 Ves. 459; Miller v. Bartlet, 15
S. & R. 137; Dunham v. Rogers, 1 Barr, 255.   That this ex-
ception to the general rule is founded upon a distinction with-
out any difference has been generally conceded, and it is used
by Baron Bramwell in Bullen v. Sharp with great force as an
argument against the soundness of the rule itself.   It is en-
tirely too late now to question either the rule or the exception.
We are bound to stand super antiquas vias, by our own de-
cided cases; for nothing is truer, or more important, than the
maxim: Omnia innovatio plus novitate perturbat, quam utili-
tate prodest.   The interest of Tracy, Benton & Co. in the
profits being, by the terms of the agreement, 'a commission
upon the sale of the merchandise consigned to them, equal to
one-half of the net profits upon such sale,' did not make them
partners, nor attach to them either the rights or responsibilities
of such partners:" Edwards v. Tracy, 62 Pa. 374.   "Parties
may so act, or hold themselves out to the public, that the law
will hold them answerable as partners, although as between
themselves, they are not partners.   But this is where the
rights of third parties are involved.   As between the parties
to the agreement, does the contract constitute a partnership?:"
Krall v. Forney, 182 Pa. 6.

Though the averment in the bill is that each of the seven
individuals agreed to advance, and did advance, certain spe-
cific sums to the capital of the firm, the truth is that no sum

was to be advanced by any one of them to the capital of the firm, as clearly appears from the unmistakable terms of each agreement. The demurrer admits the truth of what actually appears therein, but not the argumentative conclusion in the bill of a contribution to capital, if, as a matter of fact, no such contribution was intended by said parties. Instead of making any contribution to the capital of the firm, the agreement is that each of the parties of the second part shall deposit with the parties of the first part, " Jacob Kaufmann, Isaac Kaufmann, Morris Kaufmann and Henry Kaufmann, partners, doing business as Kaufmann Brothers," a certain sum of money, "which sum shall remain on deposit with the parties of the first part, without interest, until the termination of this agreement, when same shall be repaid to the party of the second part, provided, however, that the said deposit shall continue so long only as the net assets of the parties of the first part in the said business shall not fall below the sum of one million fifty thousand ($1,050,000) dollars." Why this provision as to a deposit was made is not material in this proceeding. It can well be understood that it might have been required by the parties of the first part as an assurance from the party of the second part that he would faithfully comply with his contract ; and the provision as to the reduction of the deposit, upon the reduction of the net assets of the firm, may very naturally have been inserted at the instance of the party of the second part for his own protection. But, as stated, the reasons for the insertion of the clause are not material. It is sufficient that it was inserted, requiring but a " deposit " from the party of the second part, to be returned at a definite, fixed time, without regard to what may happen to the capital of the parties of the first part. It may be impaired or totally wiped out, but no portion of the deposit made by the party of the second part is to be in any manner impaired, but paid back, dollar for dollar, by the parties of the first part.

In the seventh paragraph of the agreement of 1903 it conclusively appears that the deposit made was not to be a contribution to the capital of Kaufmann Brothers, for it is there provided that in case the parties of the first part shall incorporate their business, the party of the second part shall not receive any portion of the capital stock of the corporation,

but a sum of money to include his deposit. The separate identity and existence of Kaufmann Brothers, composed of Jacob, Isaac, Morris and Henry, are preserved all through the agreements of 1903 and 1905. They avow their right in each agreement, recognized by the party of the second part, to sell out or incorporate their business, and to take in new partners, the provision as to them being " any male member of the immediate families of any of the parties of the first part may become a partner in the said business, as may also the party of the second part hereto, or any other party whose salary at the date of the execution of this agreement is based on the total profits of said business, to wit : the following persons: Morris Baer, Theodore Kaufmann, Max L. Blum, Hugo Baum, Nathan Kaufmann and Julius Baer." Instead, then, of creating a new partnership, as is averred in the bill, the clause just quoted is a distinct admission by each of the parties of the second part that the partnership of Kaufman Brothers was to remain unchanged by the agreement of 1903, and that by it he did not become a member of the firm. Immediately following the provision that one or all of the seven parties named may in the future become members of the firm, is a stipulation that it shall not be binding upon the surviving members of the firm of Kaufmann Brothers who may purchase the interest of a deceased brother.

Again, even if the agreement of 1903 with Ludwig Kaufmann could be tortured into one creating a new partnership by taking him into the firm of Kaufmann Brothers, by what agreement with him did Morris Baer, Theodore Kaufmann, Max L. Blum, Hugo Baum, Nathan Kaufmann and Julius Baer, the other six employees, become his copartners ? If his agreement of 1903 created a new partnership between him and the Kaufmann Brothers, certainly no one else could be admitted into such a partnership without his agreement and consent, and this is true of the other six.

One of appellants' averments is, that since the agreement of 1879 was made, the good will of the firm of Kaufmann Brothers has enormouly increased, and was, at the time of Jacob's death, worth the sum of at least $6,000,000, and that this growth in its value was largely made by the seven supplemental agreements. If this be so, and the seven employees

who were parties to the seven supplemental agreements became, as the appellants aver, partners of Kaufmann Brothers, why do they exclude them from participation in the value of the good will? While averring that these seven were copartners with Jacob Kaufmann, the appellants, in the same breath, deny their right to an interest in this good will, their claim being that one-fourth of its value—$1,500,000—belongs to them alone.

The primary intent of the agreements of 1903 is the retention of each party of the second part as an employee of the parties of the first part, and all through the agreements there runs the clear intent that such employee shall not become a partner, either by sharing in the profits or by contributing to the capital. Complaint is made by the appellants that, by the agreement of 1903, Jacob's estate may continue to be tied up by liability to the seven employees, but this is a liability of any deceased partner, and it cannot affect such partner's distinct agreement as to how his interest in the firm, upon his death, shall pass to his survivors.

Though a most elaborate brief has been submitted by the learned counsel for appellants, the case, after all, is within a narrow compass and absolutely free from doubt and difficulty. The agreements, which are self-interpreting, were made by persons sui juris. The one as to the purchase of a deceased partner's interest is not an unusual one, and was fair alike to each of the four partners. If the representatives of Jacob are now disappointed that they cannot get more than the survivors offer them, the law cannot help them, for it was so written by him in his agreement with them.

The decree sustaining the demurrer to the bill and dismissing the same is affirmed at appellants' costs.