## Arbuckle's Estate.

*Decedents' estate—Partnership—Collateral inheritance tax—Intestacy of partner—Partnership agreement—Real estate—Conversion.*

Decedent, a resident of New York, was at the time of his death one of two partners composing a firm of grocery dealers with a

## 162                ARBUCKLE'S ESTATE.

Syllabus—Arguments.           [252 Pa.

main place of business in New York. A branch house owned by the firm was established and operated in Pittsburgh and the part- ners owned several pieces of real estate which were used in con- nection with the Pittsburgh business. These properties had been conveyed to them as partners and "not as tenants in common." The copartnership agreement provided that in the event of the death of either partner, the survivor should continue the business and pay the estate of the deceased partner his net interest in the same as of the date of the death, the value of the interest to be ascertained by taking an account of the stock and having the real estate appraised, the interest of the deceased partner to be paid for by the surviving partner in installments at certain periods. In an action by the Commonwealth for the purpose of collecting a collateral inheritance tax on the interest of the partnership assets of the Pittsburgh branch of the firm it was held that, under the partnership agreement, no interest in the partnership had passed to the estate of the decedent upon his death, but only a chose in action, a right to demand payment for the value of his interest in the partnership, and said chose in action did not pass to the next of kin of the deceased, but to his personal representatives as part of his personal estate having its situs in the State of New York, and that therefore the Commonwealth cannot collect such inheritance tax.

Argued Oct. 22, 1915. Appeal, No. 211, Oct. T., 1915, by the Commonwealth of Pennsylvania, from decree of O. C. Allegheny Co., May T., 1913, No. 238, dismissing exceptions to decree in Estate of John Arbuckle, deceased. Before BROWN, C. J., MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Appeal from appraisement of partner's estate for purposes of collateral inheritance tax. Before TRIMBLE, J.

The facts appear in the opinion of the Supreme Court.

The court vacated the appraisement. The Commonwealth appealed.

*Error assigned* was the decree of the court.

*James R. Sterrett*, of *Sterrett and Acheson*, with him *Francis Shunk Brown*, Attorney General, and *George Weil*, for appellant.

*Geo. H. Calvert,* of *Blakeley & Calvert,* with him *Donald Thompson, George B. Berger* and *Edward H. Flood,* for appellees.

OPINION BY MR. CHIEF JUSTICE BROWN, January 3, 1916:

The claim of the Commonwealth for collateral inheritance tax against the estate of John Arbuckle, deceased, was disallowed on facts which were either admitted or found by the court below and not assigned as error on this appeal, and the only question for our determination is whether correct legal conclusions followed them, culminating in the decree appealed from. The decedent was a resident of the State of New York, and died in the City of Brooklyn March 27, 1912, intestate, unmarried and without issue, leaving to survive him as his only next of kin two sisters, Catherine A. Jamison and Christina Arbuckle, the appellees. Letters of administration on his estate were granted by the surrogate of Kings County, New York, to Charles A. Jamison and Christina Arbuckle. They have not filed an account of their administration of the estate, and ancillary letters have not been issued in the State of Pennsylvania. At the time of his death the decedent was one of two partners composing the firm of Arbuckle Brothers, his copartner being William A. Jamison. They were dealers in coffee and groceries and their main place of business was in the City of New York. Branch houses owned by the firm were established and operated at different places, under different names. One of these was Arbuckle & Company, of Pittsburgh, this State. The partners owned several pieces of real estate, which were used in connection with their business in that city. These properties had been conveyed to them as partners, and "not as tenants in common." The copartnership agreement provided that, in the event of the death of either partner, the survivor should continue the business and pay the estate of the deceased partner his net interest in the

same as of the date of his death.   The value of that interest was to be ascertained by taking an account of stock and having the real estate owned by the partnership "carefully appraised, and in the event of dispute, referred to arbitrators, selected in the usual way, whose decision shall be final and without appeal." The interest of the deceased partner was to be paid for by the surviving partner at the rate of twelve and one-half per cent. at the end of each period of three months, the first payment to be made thirty days after the death of the deceased partner.

The claim of the Commonwealth for collateral inheritance tax is on the interest of John Arbuckle, deceased, in the partnership assets of the Pittsburgh branch of the firm.   The majority of the court below held that, under the copartnership agreement, no interest in the partnership had passed to the estate of John Arbuckle upon his death, but only a chose in action, a right to demand payment for the value of his interest in the partnership in accordance with the terms of the copartnership agreement, and that said chose in action, being a mere intangible thing, did not pass to the next of kin of the deceased, but to his personal representatives as part of his personal estate, having its situs in the State of New York.   From the decree disallowing the claim of the Commonwealth we have this appeal.

In addition to his interest in the Pittsburgh branch of the firm of Arbuckle Brothers, John Arbuckle owned in severalty at the time of his death certain real estate in that city which descended to his heirs at law.   It was, of course, liable to collateral inheritance tax, which has been paid; but, if he had died testate, domiciled in the State of New York, and directed by his will that the said real estate should be sold, the proceeds of a sale of it would not have been subject to the payment of collateral inheritance tax in this State, for the realty would have been converted into personalty by the testator himself, the situs of which, at the time of his death, would have

been in the state of his domicile, exempting it from the payment of collateral inheritance tax to the State of Pennsylvania: Coleman's Est., 159 Pa. 231; Shoenberger's Est., 221 Pa. 112. If, instead of testamentary direction by the decedent that his said real estate in the City of Pittsburgh should be sold, he had entered into a written contract for the sale of it, his interest in it would have ceased to be realty from the time he executed the contract, and would have become a chose in action —a personal demand for the consideration money— which, upon his death, would have passed, not to his heirs, but to his personal representatives, as personalty, for the purpose of regulating succession to the fund: Longwell v. Bentley, 23 Pa. 99; Leiper's App., 35 Pa. 420. The purchase-money would have become part of the personal estate of the decedent, and its situs would have been his domicile for the same reason that his domicile would be the situs of the proceeds of a sale made in pursuance of testamentary direction. In either case the State of Pennsylvania would have no claim for collateral inheritance tax upon the proceeds of the sale of the land, for it had been converted into personalty by the act of the deceased nonresident, and the situs of it, as of all his personalty, unless he had indicated a contrary intention in regulating the succession to it, would be his domicile.

Counsel for the Commonwealth contend that, under the copartnership agreement, there was no conversion of the deceased partner's interest in the partnership real estate, that the agreement was merely executory and the surviving partner had the right to elect whether he would take and pay for the interest of his deceased partner. No such interpretation can possibly be given to the copartnership agreement. It expressly provides that the surviving partner "shall pay" to the estate of the deceased partner his "net interest" in the partnership, an account of the stock to be taken and the real estate to be appraised for the purpose of ascertaining the value of that

net interest, and the surviving partner "shall be charged with the late partner's interest in this valuation and shall succeed to his interest in the ownership of all real and personal property, patents, trade-marks, rights, good-will, etc., etc., of the business." This agreement for the sale of the interest of the deceased partner to the survivor was an equitable conversion of the partnership assets, including the real estate owned by it: Maddock v. Astbury, et al., 32 N. J. Eq. 181. The copartnership agreement is a contract which was revocable only by the consent of both parties to it; it was self-executing: Blair v. Herold, 150 Fed. Repr. 199, and 158 Fed. Repr. 804; and upon the death of either party to it the liability of the survivor was absolutely fixed. Upon the death of Arbuckle his interest in the firm vested instantly in Jamison, and was to be paid for by him as provided in the contract of copartnership: Kaufmann v. Kaufmann, 222 Pa. 58; Same v. Same, 239 Pa. 42. There was no interest in the partnership, as such, that passed to the estate of Arbuckle. What passed to it upon his death was a mere right to demand a sum of money from the surviving partner, the amount of which was to be ascertained and fixed as the two living partners had agreed. No interest in the partnership passed to any next of kin under the intestate laws of this State; there passed to the personal representatives of the deceased partner— his administrators—a right to demand from the surviving partner payment of the sum which he agreed he would pay for all the net interest of the deceased partner in the partnership business and assets. The right which the administrators of the deceased partner have against the surviving partner "is essentially a chose in action and nothing else": In re Bainbridge, Ex parte Fletcher, L. R. 8, Chan. Div. 218; and if bonds, notes, stocks and mortgages be intangible personal property, having as their situs the domicile of their owner, surely this chose in action is such intangible personal property, and, therefore, not taxable here: Commonwealth's App., 11

W. N. C. 492; Orcutt's App., 97 Pa. 179; Small's Est.,
151 Pa. 1; Coleman's Est., supra; Countess de Noailles'
Est., 236 Pa. 213.

It is urged that Small's Estate, supra, sustains the
claim of the Commonwealth, and this view was enter-
tained by the learned dissenting member of the court be-
low.   Nothing is to be found in that case which conflicts
with the unbroken line of authorities denying the Com-
monwealth the right to collect the tax here claimed.
After reannouncing the rule that intangible personal
property of a nonresident, "such as bonds, mortgages
and other choses in action," is governed as to its situs
by the fiction or maxim, mobilia personam sequuntur, and
is not subject to collateral inheritance tax under our
laws, because not "situated within this State," we held
that the interest of George Small's estate in the limited
partnership association of P. A. & S. Small was liable
to collateral inheritance tax because the testator had
specifically bequeathed to his brothers all his interest in
the said partnership association and in "all the prop-
erty, real and personal, notes, stocks, bonds and ac-
counts" owned by it, the situs of which association and
all of its assets had been fixed here in Pennsylvania by
the testator and the other two members of the associa-
tion. "Not only was the 'thing' given employed in a
business which was by its nature localized, but the mani-
fest intent of the testator was that it should remain in
this State.   The bequest was specifically of testator's in-
terest, including 'all the property, real and personal,
notes, stocks, bonds and accounts,' in a limited partner-
ship organized under the laws, and having its principal
place of business in this State.   The value of the prop-
erty depended largely upon its continuance here.   There
was no reason for its conversion and transmission to the
testator's domicile, and it was given to the surviving
partners as such in specie.   The facts plainly made an
exception to the general rule.   The actual situs was

here, and liability to the tax followed": Comment on Small's Estate in Coleman's Estate, supra.

Appeal dismissed and decree affirmed at the cost of the Commonwealth.