324

**SANCHEZ et al. v. BOWERS, Collector of Internal Revenue.**

District Court, S. D. New York.
March 23, 1932.

Taylor, Blanc, Capron & Marsh, of New York City (Charles Angulo, of New York City, of counsel), for plaintiffs.

George Z. Medalie, U. S. Atty., of New York City (Walter H. Schulman, of New York City, of counsel), for defendant.

FRANK J. COLEMAN, District Judge.

The questions presented are what, if any, federal tax should be levied upon the transfer of the estate of the decedent who was a married man and a resident of Cuba. Though the ultimate conclusions of fact have not been stipulated, the record presents no issue of fact and only questions of law are raised.

Federico Sanchez died on November 13, 1921, a resident and citizen of the Republic of Cuba, leaving a widow to whom he had been married in 1889. The domicile of the marriage had always been Cuba. Under the

statutes of that country, as in many others where the principles of civil law prevail, the marriage created a conjugal partnership in all after-acquired property not obtained through gift. This conjugal partnership had for present purposes the same characteristics under the Cuban law as a commercial partnership even to the extent of constituting a third entity separate from that of husband and wife. The title to the conjugal property and the respective rights of the surviving spouse and of the decedent's estate were practically the same as though the partnership had been a commercial one. Upon the death of one spouse a liquidation of the partnership was necessary and the decedent's estate was entitled to receive only one-half of the property remaining after paying all debts and original contributions.

When Sanchez died, he had in New York standing in his individual name margin accounts with two stock brokerage houses and an account with the Farmers' Loan & Trust Company, in each of which were credited to him various securities on hand totaling $1,031,072.30, in value, which were held pledged for an indebtedness to the brokers and to the trust company amounting to $444,813.24. These securities included stocks and bonds of both foreign and domestic corporations. There was also a cash balance of $6,699.81 on deposit in his name with the trust company and a policy of life insurance payable to his estate in the sum of $25,000 issued by a domestic mutual company.

It was undisputed that all the above assets, with the possible exception of the life insurance policy, would under the Cuban law be deemed part of the property of the conjugal partnership. The mere fact that it stood in his individual name would not in any way affect the ownership nor the disposition of them after his death. He was engaged in no business nor occupation in this country and had no agent here with power of disposal and management of the assets such as might possibly confer on them a local business situs. The state of New York recognizes the law of domicile as the law determining the right of universal succession and, therefore, the property rights granted by the law of Cuba to the surviving spouse and to the decedent's estate would be given effect here.

The question presented is what, if anything, situated in the United States within the meaning of the Revenue Act of 1918 (40 Stat. 1057, 1098) was transferred upon the death of the decedent? That act provided that the tax be imposed upon the transfer of

the net estate which was to be determined in the case of a nonresident, by making certain specified deductions "from the value of that part of his gross estate which at the time of his death was situated in the United States." Section 403 (b). No definition of the phrase "situated in the United States" is expressed, and the intention of Congress in reference to intangible assets which have no physical situs is left somewhat uncertain. The statute did, however, expressly provide: "for the purpose of this title stock in a domestic corporation owned and held by a nonresident decedent, and the amount receivable as insurance upon the life of a nonresident decedent where the insurer is a domestic corporation, shall be deemed property within the United States. * * *" Section 403 (b) (3).

There are two aspects of the question which is presented, namely: (1) What was the intention of Congress with reference to the types of assets standing in this decedent's name; and (2) what was the effect of his married status and the property rights flowing therefrom? No question is raised as to the power of Congress under the Fifth Amendment of the Constitution to tax the transfer of these intangibles if it desired. In determining the intention, there should be borne in mind the two general principles that tax statutes are to be rather strictly construed against the government and that intangibles are deemed to have a situs at the domicile of the owner unless the law discloses a contrary intention. The latter principle has been much strengthened by the recent decisions of the Supreme Court which have held state statutes unconstitutional under the Fourteenth Amendment because they attempted to establish a different situs. Farmers' Loan & Trust Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. Ed. 371, 65 A. L. R. 1000; Baldwin v. Missouri, 281 U. S. 586, 50 S. Ct. 436, 74 L. Ed. 1056, 72 A. L. R. 1303; Beidler v. South Carolina Tax Commission, 282 U. S. 1, 51 S. Ct. 54, 75 L. Ed. 131; Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749.

Disregarding for the moment the decedent's married status, it is plain that the tax would be applicable to all the stocks of domestic corporations held in his accounts and to his life insurance policy. As to the stocks of foreign corporations and the bonds of both foreign and domestic debtors, the question is presented whether presence here of the physical evidences of the intangibles, namely, the certificates of stock and the bonds, gave the intangibles a local situs within the

intention of Congress. While it is true these evidences are a species of property in themselves, the Supreme Court has pointed out in the cases cited that the essential property was the rights which were evidenced by the securities and those rights have their presumptive situs at the domicile of the owner. It seems to me reasonable that Congress legislated with that legal presumption in mind and that in so far as it desired to modify the presumption it did so expressly as in the provisions quoted. This would leave none of the stocks of foreign corporations nor of the bonds of both foreign and domestic debtors subject to the tax. The only remaining asset is the decedent's cash credit balance in the Farmers' Loan & Trust Company which was merely an indebtedness to him having its legal situs at his domicile. The intention of Congress not to include it in the tax is confirmed by the fact that in the next revenue act it was expressly excluded (Revenue Act of 1921, title 4, § 403, 42 Stat. 279).

■ Aside, however, from the above considerations, none of the assets with the possible exception of the life insurance policy came within the tax, because they were indisputably the property of the conjugal partnership and were not transferred from the decedent to his estate upon his death. Disregarding the fiction of the Cuban law that the partnership constituted a third entity separate from that of the spouses, all that the decedent owned which was transferred to his estate, or all the right which was generated in his estate by his death, was a chose in action to claim one-half of the proceeds of the partnership property after the payment of debts and original contributions. This was an intangible which had its legal situs at his domicile. Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749; In re Arbuckle's Estate, 252 Pa. 161, 97 A. 186.

■■ As to the life insurance policy I can find nothing in this record to show that it was an asset of the conjugal partnership. While it was issued within the marriage period, there is nothing to show that it was not paid for out of decedent's separate estate. The rule of Cuban law to the effect that all property acquired within the marriage period is prima facie presumed to be under conjugal ownership cannot be applied in this court. That is a mere rule of procedure which is in conflict with the rule of this forum placing the burden of proof upon the plaintiff. As a matter of extrajudicial consideration it would seem more probable that the premiums were paid out of current funds belonging to the partnership, but there is no evidence or stipulation covering the point. I will, if counsel for the plaintiffs desires it, reopen the case for the purpose of admitting proof upon that point. Otherwise I will direct a verdict for the plaintiff in a sum to be computed by counsel upon a holding that the only asset to be included in the tax is the life insurance policy and its dividends.