## JOHN MIRKIL v. SAMUEL MORGAN ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued March 24, 1890—Decided April 7, 1890.
[To be reported.]

1. While a court of equity will sometimes issue an injunction in cases of private trespass, it will do so only when the right is clear. If the facts be disputed, and the right not clear, the plaintiff must first establish the right at law, and the objection that he has not done so, goes to the jurisdiction of equity and may be raised by the court itself, at any time, though not raised in the pleadings nor asserted by counsel.

2. Where the findings of a master have been approved by the court below, clear error must be pointed out to justify their reversal by the Supreme Court, and it is not enough that there is a conflict of testimony; if, however, the master's findings have been set aside by the court, the Supreme Court, having equal advantages in arriving at the truth, will examine the testimony and determine whether it sustains the master.

3. A bill in equity praying for an injunction against an alleged nuisance, consisting of the percolation into the plaintiff's cellar of water from the defendant's premises, and for damages on account thereof, should be dismissed, when the source of the water complained of must be ascertained by deduction from the facts proved, and those facts support the inference that such percolation results from natural causes, and not from any act or default of the defendant.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 230 January Term 1889, Sup. Ct.; court below, No. 362 September Term 1885, C. P. No. 4, in Equity.

On September 23, 1885, John Mirkil filed a bill in equity against Samuel Morgan, George H. Evans and John D. Grover, charging that in consequence of the improper and negligent construction and maintenance of an insufficient drain upon premises in the city of Philadelphia, owned by the defendant, Morgan, and occupied by the other defendants, as his lessees, for the carrying on of the business of cleansing and refining hair, large quantities of water, collecting on said premises, ran and percolated into the cellars of three dwellings, be-

Master's Report.

longing to the plaintiff, numbered respectively 1917, 1919 and 1921, East Huntingdon street, erected on property adjoining that of said Morgan; that by reason of certain machinery unlawfully introduced and maintained by said Morgan in his said property, without proper foundations for the same, and unlawfully and negligently used by said lessees, the walls of the plaintiff's said houses had been and were violently shaken and in great danger of falling; and that these acts and omissions of the defendants tended to the continual and irreparable injury of the plaintiff. Upon these averments, the bill prayed for an injunction, for damages and for general relief.

The defendants answered the bill, denying the charge that there was an insufficient drain, improperly repaired or managed, upon their premises, or that the injury from water complained of in the bill was caused thereby; denying, also, the charge respecting the machinery in their factory and that the shaking of the plaintiff's houses, etc., was caused by the defendants, and averring that the plaintiff had an adequate remedy at law. Thereupon the court appointed *Mr. James P. Townsend* examiner, and, upon the filing of his report as such, made a further order appointing him as master.

The master's report, after reciting the averments of the bill and answer, proceeded as follows:

Thus we see that the issues in this case may be examined with a view to answering two questions: 1. Are the injuries complained of caused by the defendants' acts? and 2. Is the plaintiff entitled to the equitable relief prayed for?

The answer itself does not deny the existence of the injuries, merely denying that they are caused by the defendants, and the plaintiff's testimony is conclusive on this point as far as it goes. It will prove satisfactory to analyze the testimony with regard to the injuries complained of by the percolation of water, separately from the injuries caused by the shaking and disturbance caused by the running of the mill.

1. As to the existence of water in the cellars of plaintiff's houses. It appeared from the testimony that water appeared in the cellar of 1921, being the house next to the mill, while the houses were being built; and, by various witnesses since, that water has been in the cellars of all three houses in varying

Master's Report.

quantities, sometimes as deep as eighteen inches and at other times only two or three inches. That the water invariably appeared in the cellar of 1921, the east house, first. That the water appeared along the foundation wall next the mill. It looked of a limy color and was not clear. That it seemed to come through the wall and through the edge at the bottom of the wall, but it was worse where it trickled through the wall. The tenants of 1921 dug a shallow trench across the cellar five or six inches wide and five or six inches deep. The cellar of 1919 would be dry until there was too much in the cellar of 1921, and then it would run into the cellar from 1921, the next house east. There is thus no doubt that there is water in the cellars of plaintiff's houses, to a greater or less extent, and the witnesses called by the plaintiff show that the presence of the water there has caused them considerable inconvenience and in some instances affected their health.

The vital question upon this branch of the case is, from what cause does the water fall into these cellars, and especially into that of 1921? The plaintiff alleges that the water comes from refuse water, after use by defendants in their business, which is negligently allowed to escape upon their own premises and then drained through into the cellar of the house next door, and then into the cellars of the others. The defendants, on the contrary, deny that the flow of water is caused by the escape of any water from their premises. That the side of the mill and the adjoining lots of Mr. Mirkil are on made ground, and that the slope of the natural surface was towards Huntingdon street, the rising ground lying towards the north and west. That while digging the cellars in complainant's houses the latter filled with rain water, which would not sink and had to be pumped out; and that the cellar of 1921 being the lowest point, the water would show itself there first, as the bottom of a natural basin. That the defendants' premises, where they avowedly use in the prosecution of their business large quantities of water, were completely underdrained by terra cotta drains into the main drain, ten or twelve inches in diameter, and hence into the main sewer with a fall of ten or twelve feet; then they have a surface drain. That everything was done towards providing a means for carrying off the waste water without regard to expense. There is no cellar in the mill, which is built upon the surface of the ground.

### Master's Report.

Now, what is the evidence of the plaintiff's witnesses as to the source of the fall of water into the cellar, and what reason did they give for their determination as to the cause of this fall?

—The master then discussed the testimony of many witnesses called by the parties on both sides, and proceeded:

Upon a review of all the testimony, the master decides that it is not certainly proved that the presence of water in the plaintiff's cellars, as complained of, is due to the imperfect construction of defendants' drain, or want of repair thereof, or the negligent, careless or improper use thereof, as charged in the plaintiff's bill; and, so far as this part of plaintiff's bill is concerned, the result of the proofs in the case is to leave the matter at the best in a doubtful state, with strong reasons to believe that part, at any rate, if not all, of the water in plaintiff's cellars does arise from natural causes. This is fatal to plaintiff's bill upon this branch of his case, for certainty and precision are required before equity will interfere.

2. The second branch of the plaintiff's case avers that by reason of machinery unlawfully introduced without proper foundation and support by the defendants, plaintiff's houses have been injured and shaken, and his tenants frightened, annoyed, discomfited and their lives endangered. All the plaintiff's witnesses agree in testifying that the houses are affected by the vibration caused by the running of machinery in defendants' mill. . . . .

On the part of the defendants, also, it was testified that they run upon their premises, as necessary to their business, two whizzers (machines which revolve rapidly), each consisting of a cage in which is placed the moistened hair, and that out of the same the water is drained by the revolution of the machine; that this machine was of the best quality, carefully erected and operated so as to produce the least annoyance to other people.

Careful consideration of the testimony has satisfied the master that there is neither a negligent nor a wilful infliction of injury upon the plaintiff or his properties, in the mode of operating the defendants' factory. Whatever injury may have resulted or shall result to his property, by reason of the nuisance complained of arising from the defendants' factory, is only

Master's Report.

such as is incident to a lawful business conducted in the ordinary way and by no unusual means. Still, there may be injury to the plaintiff, but this of itself may not entitle him to the remedy he seeks here.

" Where damages will compensate for the loss suffered from a nuisance, equity will not interfere." Diminution in the value of property is not per se ground for granting an injunction. There was no direct evidence of damage outside of diminution of the value of the property, and it certainly appears to be well settled that the plaintiff could not file a bill for the molestation of his tenants' enjoyment, as regards their own feelings, or loss of health, and the comforts of their homes. Besides, in a question of this kind, an injunction being of grace and not of right, it lies on the party who asks for the decree, which, if granted, will bind his adversary hand and foot, to make out a clear case: Sparhawk v. Pass. Ry. Co., 54 Pa. 401. And further; a chancellor, in such case, will consider whether he would not do a greater injury by enjoining, than would result from refusing and leaving the party to his redress at the hands of a court and jury: Richards's App., 57 Pa. 113. This has been held also in McCaffrey's App., 105 Pa. 253, and followed with strong approval in Huckenstine's App., 70 Pa. 102.

Thus, upon the whole case, the master finds that the plaintiff's bill should be dismissed, and he reports the following form of decree, which he considers proper to be entered in the case. . . . .

Exceptions to the report were filed by the plaintiff, alleging, inter alia, that the master erred; (1) In finding that the bill should be dismissed.[1] (2) In reporting that the bill should be dismissed with costs.[2] (3) In not recommending a decree for the plaintiff with costs;[3] and (4) In not awarding damages against the defendants.[4] Being overruled by the master, these exceptions were afterwards renewed before the court, when, after argument thereof, the court, without opinion filed entered a decree sustaining the exceptions numbered 1, 2, 3 and 4, and referring the case back to the master to report what damages had been sustained by the plaintiff, and a proper form of decree, both parties to be allowed to produce any additional testimony upon the subject of damages which the master might consider material and proper.

### Master's Report.

In obedience to the order of the court, the master received additional testimony upon the subject of damages, and filed a supplemental report, finding that the plaintiff had proved no depreciation or loss by reason of the shaking or vibration caused by the defendants' mill, and that an award of the sum of $250 would fully cover all damages resulting to the plaintiff from water from said mill. In this report the master made the following remarks upon the plaintiff's claim for damages:

"It was not in evidence before the master, at the time of the prior report, that the cellars of the complainant's houses had been cemented, though it appears now to have been done in the summer of 1887, after the evidence had been closed. The complainant has failed to satisfy the master by any evidence before him, up to the present time, that the respondents are properly chargeable with the cost of cementing and draining the cellars of all three houses; and, until each cellar was protected from natural drainage, it was and must remain uncertain how far the water from the mill was responsible for damage. From the testimony before the master now, it is more than probable that, if the cellars of these houses had been drained in the beginning, as other houses in the neighborhood had to be drained, before their cellars were dry, the trouble and damage from water would have been avoided, or at least confined to No. 1921. . . . .

"No evidence such as would be afforded by a competent mason or builder who had examined the building with special reference to the damage caused by water to the cellar walls, if any, has been afforded the master. Surely, if such causes as would produce the vacancy of houses alleged to be due to water from the mill had been at work, enough traces of them would be visible and apparent to such a witness; and if not, they cannot be recovered for. In the opinion of the master, there are none proved. Vague assertions cannot afford the basis of an award in dollars and cents."

—After argument, the court, overruling exceptions to the master's supplemental report, and adopting a form of decree therein reported, ordered and decreed that the defendants be enjoined from permitting the escape of water from the factory described in the bill into the adjoining property of the plaintiff, No. 1921, East Huntingdon street, to the injury thereof;

that they pay to the plaintiff the sum of $250 damages, and that they pay the costs of the proceeding. Thereupon, the defendants took this appeal, specifying, inter alia, that the court erred:

1–4. In sustaining the plaintiff's exceptions to the master's report.[1 to 4]

Upon the call of the case for argument in the Supreme Court, on April 15, 1889, the court declined to proceed with it, for the reason that the decree reversing the findings of the master, without an opinion indicating the grounds of the reversal, was practically a pro forma decree, and it was ordered that the record be remitted, that the court below might place the reasons for reversing the master upon the record: Morgan's App., 125 Pa. 561.

· The record having been returned to the court below, on November 2, 1889, the following opinion was filed, THAYER, P. J.:

The Supreme Court having sent this case back to us with a request for additional light upon the subject, it is with great pleasure we comply with their request.    ·

The remarks of the learned judge upon the appeal taken in this case, reported in 125 Pa. 563, seem to have been predicated upon a total misapprehension of the facts. This was perhaps owing to the statement contained in the appellant's paper-book, on page 12, implying that the appellant's counsel were ignorant of the reasons for which this court reversed the first findings of the master. An examination of the exceptions filed by the complainant to the master's report will disclose the fact that they related entirely to the master's finding of the facts, and that they neither raised nor propounded any questions of law. The law in this case was not involved in any doubt, nor was there any controversy about it. The whole controversy was about the facts.

The bill was to enjoin an alleged private nuisance maintained by the defendants. The defendants denied in their answer the facts charged in the bill, viz., that they caused the injury of which the plaintiff complained, and so the issue of fact was made up. When the exceptions to the master's report were

before the court, the questions discussed related entirely to the weight of the evidence. After the fullest argument on both sides, and a careful examination of the evidence by the judges, the court were of the opinion that so far as related to the nuisance arising from the escape of water from the defendants' premises into those of the plaintiff, his complaint was well founded, and he was entitled to relief against that, and to reasonable damages for the injury and inconvenience already suffered. They accordingly, after the supplemental report of the master had been filed, made the decree on page 65 of appellant's paper-book. It was perfectly well understood at the time of the argument that the only questions in the case were questions of fact, and that in sending the case back to the master the court plainly indicated its opinion that the weight of evidence in the case was with the plaintiff.

There seemed, therefore, to be no necessity whatever for preparing a written opinion to express what was so plainly obvious to all the parties concerned and to the counsel representing them, viz., that what was decided by the court was the simple question of fact, that upon such evidence as had been given in the cause the plaintiff ought not to be turned out of court without remedy. Both parties perfectly understood the grounds of the decision. It seemed to us altogether unnecessary to enter into a written discussion of the evidence, or to prepare a labored analysis which would be only a tedious repetition of the testimony of the different witnesses; nor can we see that any good purpose would be subserved by our doing so now. It appears to us that the full measure of our official obligation was filled by an announcement that in the opinion of the court there was sufficient evidence to sustain the plaintiff's case and for sending it back to the master for a further report. We are of that opinion still. It is a question of fact which no one can decide intelligently and satisfactorily without carefully examining, as this court did, all the evidence in the case.

From what has been said, it must be apparent that no pro forma decree was ever made by the court in this case, and that the judgment of the court was in no respect arbitrary or inconsiderate; that, on the contrary, the case received the careful consideration of this court, and was deliberately decided after

full and exhaustive argument on both sides. More than this I do not feel called upon under the circumstances to say.

*Mr. R. O. Moon* (with him *Mr. Arundel*), for the appellants:

1. To authorize the granting of an injunction, it is necessary that the plaintiff's right to it be free from doubt: Sparhawk v. Pass. Ry. Co., 54 Pa. 426; Hieskell v. Gross, 3 Brewst. 430; Grey v. Railroad Co., 1 Gr. 412. In view of the facts, that all cellars in the neighborhood were troubled with water until drained into the sewer; that the location and the character of the soil accounted for this; that the plaintiff had never taken proper precautions to rid himself of water by draining into the sewer; that no defect in the defendants' drains had been established, and that the water did not flow into the cellar constantly, but only at particular times, there is a serious doubt whether the trouble in the cellar was due to the defendants' fault, and an almost irresistible opinion that it is due to the fault of the plaintiff. Therefore, the plaintiff's right to equitable relief is too doubtful for the issuing of an injunction, until it is first established at law.

2. Moreover, if a greater injury would be done by enjoining the defendants than by leaving the parties to their remedy at law, the injunction should be refused: Richards's App., 57 Pa. 105; McCaffrey's App., 105 Pa. 253; Huckenstine's App., 70 Pa. 102; Grey v. Railroad Co., 1 Gr. 412. In this case, a useful and necessary business would be destroyed; while the only injury that can possibly be suffered by the plaintiff from its continuance, is a money loss in the depreciation of his property and the alleged lowering of rents. As the plaintiff complains, not of any personal annoyances or discomforts, but merely of a pecuniary loss, his damages are not of such a nature as to authorize the intervention of equity: High on Injunctions, § 781; Attorney General v. Nichol, 16 Ves. 338; Simpson v. Savage, 1 C. B., N. S., 347; White v. Cohen, 19 Eng. L. & Eq. 146: Goodall v. Crofton, 33 Ohio 371 (31 Am. Rep. 535); Humford v. Railroad Co., 36 Eng. L. & Eq. 380; Van Bergen v. Demarest, 4 Johns. Ch. 37; McKeon v. See, 51 N. Y. 300 (10 Am. Rep. 659); Bier v. Cook, 37 Hun 38.

*Mr. I. Hazleton Mirkil* and *Mr. F. Carroll Brewster*, for the appellee:

Arguments.

1. The answer merely denies the source of the injuries complained of in the bill, not their existence. That the defendants were the source of the injury from water, was fully proved. The master, in coming to a contrary conclusion, disregarded important facts which were shown without contradiction, viz., that the water in the cellars was of a lime color and of the same kind as that used by the defendants in their business; that it contained and left a white greasy scum, and had a bad odor; that it came through the foundation wall next to the mill, and the soil at the foot of this wall, and never came from any other direction; that it came in more rapidly from Tuesday until Saturday, than from Saturday until Tuesday, when the mill was at rest; that it came in for several weeks before there was any rain; that an employee of the defendants had admitted that it was their water; that defects were proved to exist in the defendant's drains, and when they were notified by the board of health to repair them, they asked for time.

2. Equity will restrain constantly recurring injuries of this kind, although not continuous, and occurring in the prosecution of a lawful business: High on Injunctions, § 490; Stewart's App., 56 Pa. 413; Mulligan v. Elias, 12 Abb. Pr., N. S., 259; Bier v. Cook, 37 Hun 38; McKeon v. See, 51 N. Y. 300 (10 Am. Rep. 659); Ross v. Butler, 4 C. E. Green 294 (97 Am. Dec. 654); Thompson v. Behman, 37 N. J. Eq. 345; Adams v. Michael, 13 Am. L. Reg. 197; Robinson v. Baugh, 14 Am. L. Reg. 586; Dittman v. Repp, 33 Am. Rep. 325. Equity having acquired jurisdiction, the plaintiff is entitled to a decree for damages: Davis v. Lamberton, 59 Barb. 480; Somers's App., 6 W. N. 441; Allison's App., 77 Pa. 221. The plaintiff, as well as his tenants, may apply for an injunction: Kerr on Injunctions, 170, 187; Jackson v. Duke of New Castle, 33 L. J. R., Ch. & Bank., 698; McKeon v. See, 51 N. Y. 300 (10 Am. Rep. 659); Robinson v. Baugh, 31 Mich. 290; Story's Eq. Jur., § 925; High on Injunctions, § 485; Commonwealth v. Railroad Co., 24 Pa. 159; Scheetz's App., 35 Pa. 88; Stewart's App., 56 Pa. 413.

3. In all the cases cited by the defendants, without a single exception, either the complainant failed to establish his title, or the mischief sought to be restrained was merely apprehended and the trespass damnum absque injuria. In the present case,

Opinion of the Court.

the injuries complained of are the direct result of unlawful acts, and not such as ordinarily flow from the proper prosecution of a lawful business. They are owing to a want of proper care and skill. The defendants' machinery is defective and their drains are out of repair. In such case equity will restrain the nuisance, wherever substantial damages might be recovered in respect of it in an action at law: Crump v. Lambert, L. R. 3 Eq. Cas. 409; Wood on Nuisances, §§ 777–790; Jackson v. Duke of New Castle, 33 L. J. R., Ch. & Bank., 698. The master having disregarded uncontradicted testimony establishing material facts, his report is not to be accorded the same weight that it otherwise would have. Such disregard constitutes plain mistake which the appellate court will correct, even when the report has been approved by the court below.

OPINION, MR. CHIEF JUSTICE PAXSON:

In this case the master and the court below differed upon the facts. On the one hand, we have an elaborate discussion of the evidence by the master; on the other, a brief opinion by the learned judge, the substance of which is that the master found the facts against the weight of the evidence. Beyond this he has given us no aid in the consideration of the case.

The bill was filed to enjoin an alleged private nuisance maintained by the defendants. The latter are the owners or lessees of a factory building, used for the purpose of refining and cleansing hair. The plaintiff is the owner in fee of three dwelling-houses adjoining said factory building, and he alleges that, by reason of insufficient drainage, the water used by defendants, in the process of preparing the hair, escapes from said drains, percolates through the walls into the cellars of his houses, rendering them unhealthy and unfit for occupancy; that by reason thereof his houses have remained idle for a portion of the time, with loss of rents, and injury to his said buildings. After a review of the testimony, the master found: " Upon a review of all the testimony, the master decides that it is not certainly proved that the presence of water in the plaintiff's cellars, as complained of, is due to the imperfect construction of defendants' drain, or want of repair thereof, or the negligent, careless, or improper use thereof, as charged in the plaintiff's bill; and, so far as this part of plaintiff's bill

is concerned, the result of the proofs in the case is to leave the matter, at the best, in a doubtful state, with strong reasons to believe that part, at any rate, if not all, of the water in plaintiff's cellars does arise from natural causes. This is fatal to the plaintiff's bill upon this branch of his case, for certainty and precision are required before equity will interfere." The master, therefore, concludes that it is not a case for equitable relief, and cites, in support of his views, Richards's App., 57 Pa. 105 ; Huckenstine's App., 70 Pa. 102 ; Sparhawk v. Pass. Ry. Co., 54 Pa. 401. The learned master was clearly right upon the law. While a court of equity will sometimes restrain in a case of a private trespass, it will only do so where the right is clear. Where the facts are disputed, and the right is not clear, the plaintiff must first establish it at law. In Parker v. Winnepiseogee etc. Co., 2 Black 545, it was held that an objection that complainant has not established his right at law, or that it is doubtful, and therefore not enforceable in equity, goes to the jurisdiction, and may be raised by the court itself at any time, though not raised in the pleadings or asserted by counsel. In our own state, we have authorities without number upon this point. It is sufficient, in addition to the cases cited by the master, to refer to Mowday v. Moore, 133 Pa. 598, decided at this term, and to New Castle v. Raney, 130 Pa. 546.

Was the master also right upon his facts ? Where the findings of the master are approved by the court, we have little difficulty. In such cases, clear error must be pointed out. It is not enough that there is a conflict of testimony. In such instances, the master is in a better position than either the court below, or this court, to weigh the evidence and decide intelligently upon it. In this case the master was also examiner, and had the witnesses before him. He had the advantage of their manner and appearance to aid him in arriving at the truth. While we hesitate to differ from so able a jurist as the learned president of the court below upon the facts, we are yet sensible that we have equal advantages with him in arriving at the truth. In either case, we have to take the testimony as it appears in cold type, without the benefit of having the witnesses before us face to face. Fortunately, it is not so much a conflict of evidence, in this case, as the deductions to be drawn therefrom.

We have examined the testimony with much care, and are of opinion that it fully sustains the findings of the master. So far as human testimony can establish anything, the drainage of defendants' mill is as perfect as mechanical skill can make it. When complaint was made the defendants had it examined carefully, and it was found in good order. The fact, however, remains that water came into the plaintiff's cellar, apparently from defendants' property. Several witnesses have so testified, and we assume that they have spoken the truth. But it does not follow that it came from the water used in preparing the hair, or by reason of any defect in the drainage. On the contrary, the significant fact appears that this flow of water is not steady. Benjamin Hastie, a tenant of one of the plaintiff's houses, and the first witness called by him, stated: " No water in the cellar now, nor has there been for two months." Another of plaintiff's witnesses testified: " In July there was a fortnight that it (the cellar) was dry." The testimony was uncontradicted that the flow of water was intermittent. Yet the mill was in operation daily, and if the water came from the mill by means of defective drains, there must have been a daily flow of water into plaintiff's cellar. This is as certain as the law of gravitation, or that water will seek its level. We must look elsewhere, therefore, for the cause of the flooding of plaintiff's cellars.

Fortunately the evidence gives us all the information necessary to a solution of the difficulty. The defendants' mill was constructed without a cellar under it. There is nothing but the necessary foundations for the walls and machinery. The plaintiff's houses have cellars under them, and the cellars are several feet lower than the foundations of defendants' mill. The site of the mill, of the plaintiff's houses, as well as of many other houses in the immediate neighborhood, was made ground. It was originally low; a kind of basin, into which the water flowed from at least two directions. It was filled up with dirt and rubbish dumped there, as is the constant practice in the case of abandoned brick-yards and other low places near a large city. When it became filled up in this manner, it would absorb water like a sponge, and, having a tight subsoil, the water would remain there until it dried out, or found a vent in some way. It held water like a dish. When defendants' mill was

Opinion of the Court.

built they found the water within a few feet of the surface, and had great difficulty in getting sufficient foundations. The same thing occurred when the plaintiff built his houses. The water came into his cellars before they were finished, and had to be pumped out, and it was proved that nearly all the cellars in the neighborhood were affected in the same way. The water came in, and had to be pumped. In some instances cellar drains have been constructed and connected with the sewer, and since then the owners have had no trouble with damp cellars. It is easy to see, therefore, how the water could have come from defendants' property without any defect in the drains. As there was no cellar under the mill, the soil would naturally absorb the rain-water, and the latter make its way underneath to the plaintiff's cellar. It was urged, however, that the water which came into the cellars from defendants' side resembled the water which was used in the machine for cleansing the hair. It was discolored and greasy to some extent, and looked like lime water. This is an argument, but as a fact it is not conclusive, and, in view of all the evidence, is not even probable. This basin, as before observed, was filled up with all kinds of refuse; a portion of it probably was the débris of old buildings which had been torn down, old plaster, and the like. This would naturally have its effect upon water confined there for weeks or months, and might well give it the appearance referred to. It would naturally take up the impurities with which it came in contact.

After careful consideration of the testimony, our conclusion is that the water which flows into the cellars of plaintiff's houses comes from natural causes, and is not the result of any act of commission or omission of the defendants. The plaintiff has not suffered any damage from water with which he has a right to charge the defendants. The alleged injuries from the noise of the machinery, and the jarring caused thereby, do not require discussion.

> The decree is reversed; the first report of the master confirmed, and the bill dismissed; the costs to be paid by the appellees.