# DeHaven's Estate.

*Contracts—Agency—Partnership — Construction — Decedents' estates—Distribution—Real estate.*

1. While a right to share in the profits of a transaction or business may constitute the person so sharing a partner, a commission equal to such share, as compensation for services, does not.

2. The absence of community of liability for losses and community of interest in the property, while not controlling as to the nonexistence of a partnership, are strongly evidential of the character of the transaction.

3. An agreement between two persons relating to a real estate transaction provided that one of the parties should acquire title to certain land and should immediately convey to the other, who should advance part of the purchase-money. Upon the sale of the property, the party who first acquired title should receive half the net profits. It was provided that he should use his "best efforts towards getting the property in condition for sale and selling it." The property was duly conveyed to the party advancing the purchase-money and upon his death, the property was sold by his executors and half the net proceeds were retained by them. Decedent's widow contended that decedent and his associate were partners as to the land embraced in the agreement, and that the estate's share of the fund was distributable as personalty. *Held,* that under the agreement the party who first acquired title to the land was an agent; that decedent was his principal; that the agent's share of the profits was in the nature of compensation for his services; that there was no partnership as to the land, and the Orphans' Court did not err in ordering a distribution of the fund as real estate.

Argued Jan. 13, 1915. Appeal, No. 162, Jan. T., 1914, by Annah B. C. DeHaven, from decree of O. C. Philadelphia Co., Jan. T., 1910, No. 445, sustaining exceptions to adjudication in estate of Holstein DeHaven, deceased. Before BROWN, C. J., MESTREZAT, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Exceptions to adjudication. Before GUMMEY, J.
The opinion of the Supreme Court states the facts.

The court sustained the exceptions of the residuary legatees in an opinion by GEST, J.  Annah B. C. De-Haven, testator's widow, appealed.

*Errors assigned* were in sustaining the exceptions.

*Wm. N. Trinkle,* with him *John C. Bell,* for appellant. —The agreement between Landreth and decedent constituted them partners as to the real estate in question: Welles's Account, 191 Pa. 239; Painter v. Painter, 220 Pa. 82; Buckley v. Doig, 188 N. Y. 238 (80 N. E. Repr. 913); Patrick v. Patrick, 71 N. J. Eq. 347 (63 Atl. Repr. 848).

*John G. Johnson,* with him *Maurice Bower Saul,* for appellees.—There was no partnership between Landreth and the decedent and the proceeds of the sale of the real estate made after the death of the decedent were distributable as realty, not as personalty: Edwards v. Tracy, 62 Pa. 374; Ryder v. Jacobs, 182 Pa. 624; Kaufmann v. Kaufmann, 222 Pa. 58; Winslow v. Young, 94 Maine, 145 (47 Atl. Repr. 149); Blight v. Ewing, 1 Pitts. Rep. 275; Hays v. Colonial Trust Co., 217 Pa. 53.

OPINION BY MR. JUSTICE MESTREZAT, March 1, 1915:

This is an appeal by the widow of Holstein DeHaven, deceased, from the decree of the Orphans' Court of Philadelphia County distributing the proceeds of the sale of certain real estate of the decedent sold by his executors.  The appellant claims that the fund should be distributed as personalty, and that as she elected to take against the will and her husband left no children, she is entitled to one-half of the fund absolutely.  The residuary legatees contend that the fund must be distributed as real estate, and that the widow is only entitled to participate in the fund as the proceeds of real estate.

The solution of the question involved requires the construction of the agreement between Lucius S. Land-

reth and Holstein DeHaven which is contained in a letter written by the former to the latter, and which is as follows: "I signed an agreement yesterday with Denis Kelly for the purchase of a lot on Marshall Road near 62d street, etc., for $5,000 cash, $500 down and the balance on or before July 5th, together with my bond and mortgage for $16,000, a copy of which agreement you have. My understanding of the matter is this: You are to furnish me the money to settle with Mr. Kelly, and after settling with him, I am to convey the property to you, you to pay taxes, interest on mortgage, etc., while the property is unsold. Upon a sale of the property, you are to be repaid such sums as you may have put in with interest at five per cent., and the balance of the proceeds, after deducting any commission paid to a broker for the sale, is to be divided equally between us; I to use my best efforts toward getting the property in condition for sale, and selling it."

The learned court below held that the agreement constituted a partnership between the parties so far as concerned the land which formed its subject-matter. The fund for distribution is a part of the proceeds of the sale of this land.

The intention of the parties as disclosed by their agreement is the test of the relation between them, and we think the contract established the relation of principal and agent. DeHaven owned the real estate. While Landreth purchased it and took the title, he immediately conveyed it to DeHaven at the price Landreth paid for it. The consideration was $21,000, of which $5,000 was cash, and $16,000 was secured by a bond and purchase-money mortgage on the premises. By the agreement, DeHaven was to take the title, pay the taxes, interest on the mortgage, etc., until the property was sold. The title was not taken by DeHaven for the benefit of both parties, but it and the control of the real estate were in DeHaven, and Landreth could assert neither against him. The agreement gave him no inter-

est whatever in the land, nor could he have contracted
a debt which, under the terms of the agreement, would
have imposed liability on DeHaven or the land. His
creditors could not have reached it by any legal process.
The fact that Landreth's bond accompanied his pur-
chase-money mortgage does not affect the case, or give
him any greater or other rights in the transaction than
he otherwise would have. The parties regarded it as of
no moment and made no mention of it in the agreement,
clearly treating the debt as amply secured by the mort-
gage on the premises.

There was no community of liability for losses and,
as pointed out, there was no community of interest in
the property. These facts, if conceded not to be con-
trolling, are strongly evidential of the character of the
transaction. The agreement did not provide there
should be a community of profits, as such, which might
result from the sale of the property. The title to the real
estate was in DeHaven, and so far as it affects the rights
of the parties to this proceeding, it is immaterial wheth-
er he secured it directly from Kelly or from him through
Landreth or obtained it from another. The agreement
provided specifically what Landreth was to do and how
his services were to be compensated. The net proceeds
of the sale, the contract provides, "are to be divided
equally between us; I to use my best efforts toward
getting the property in condition for sale, and selling it."
Such were the services Landreth was to perform, and
such was the compensation he was to receive. His duties
were to put the property, owned by DeHaven, in con-
dition to sell and to make the sale. His compensation
was to be contingent upon, and to be measured by, the
one-half of the excess, if any, of the proceeds of sale over
and above the expenditure by DeHaven in the purchase
and maintenance of the property when it was sold. This
was the manifest intention of the parties as disclosed by
their agreement.

It is clear, therefore, that Landreth was simply the

agent to sell DeHaven's property, and his compensation was to be measured by one-half of the net profits of the sale. The agreement did not create a partnership between the parties. "While a right to share in the profits may constitute a partner," says SHARSWOOD, J., in Edwards v. Tracy, 62 Pa. 374, 381, "a commission equal to such a share, as a compensation for services, does not. That this exception to the general rule is founded upon a distinction without any difference has been generally conceded, and it is used by Baron Bramwell in Bullen v. Sharp with great force as an argument against the soundness of the rule itself. It is entirely too late now to question either the rule or the exception......The interest of Tracy, Benton & Co. in the profits being, by the terms of the agreement, 'a commission upon the sale of the merchandise consigned to them, equal to one-half of the net profits upon such sale,' did not make them partners, nor attach to them either the rights or the responsibilities of such partners." In Ryder v. Jacobs, 182 Pa. 624, 629, Mr. Justice DEAN speaking for the court said: "This court, since Miller v. Bartlet, 15 S. & R. 137, decided in 1826, and Dunham v. Rogers, 1 Pa. 255, decided in 1845, has uniformly held, that compensation for services to be paid out of and contingent on profits does not of itself constitute the employee a partner." Judge STORY, delivering the opinion in Hazard v. Hazard, 1 Story 371, 375, says: "A mere participation in the profits will not make the parties partners inter esse whatever it may do as to third persons, unless they so intend it. If A. agrees to give B. one-third of the profits of a particular transaction in business for his labor and services therein, that may make both liable to third persons as partners, but not as between themselves."

The agreement between the parties having simply empowered Landreth as agent to sell the property, the agency, of course, expired at DeHaven's death. Landreth, however, was entitled to compensation for any

services he rendered under the agreement, and if not paid he could have enforced payment by an appropriate action. There is no ground for the contention that a bill would lie by Landreth to compel specific performance of the contract. No time was fixed for the sale nor a price at which the property should be sold, and Landreth could not have compelled a sale at any time nor at any price though deemed entirely adequate by both parties. DeHaven could have sold for a sum less than the cost price and no profits would have resulted from the sale. If, however, he failed to comply with his part of the agreement, Landreth's remedy was not in equity. but by an appropriate action at law. Such being the nature of the contract which created only the relation of principal and agent, inter esse, and the real estate having remained unsold at the time of De-Haven's death, there was, of course, no conversion of the land to personalty. Hence the widow, on the death of her husband, was entitled as such to her rights in the realty, and when it was sold by the executors her right to participate in the proceeds was, not as personalty, but as real estate.

The result of our consideration of the case, although for a different reason, is the same as that of the learned court below, and it follows that the decree must be affirmed.