## Kirshon et ux. *v.* Friedman, Appellant.

172

Argued November 24, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*J. Julius Levy,* with him *Maurice V. Cummings,* for appellant.

*C. H. Welles, 3rd,* of *Welles, Mumford & McGrath,* with him *Nogi, Harris & Nogi,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 27, 1944:

This case began by a Bill in Equity asking for a decree of dissolution of an alleged partnership and for an accounting of the capital and profits of the partnership. The allegations are that in August 1937 a partnership was formed between three people, to wit, the

defendant, who had a 75% interest therein, his daughter Fannie Kirshon, and her husband, both of whom had a 25% interest therein. It is alleged that the partnership existed from 1937 until the date of the filing of the bill, to wit, May 1941. The bill sets forth further that prior to 1935 the defendant, Harry Friedman, was the proprietor of a wholesale electrical appliance business known as the Bell Electric Co. of Pennsylvania, with place of business located at 218 Lackawanna Avenue, Scranton, and that in 1935 a corporation was formed under the name of Bell Electric Co. of Pennsylvania, Inc., which took over the business until about August 1937. It is claimed that the plaintiff, Fannie Kirshon, was the owner of 25 shares of the capital stock of this corporation, which represented a 25% interest therein, and that she was employed as bookkeeper and clerk and was secretary of the corporation. She was then unmarried. It is claimed also that on or about June 15, 1937, this defendant orally agreed with the plaintiffs to dissolve the corporation and to form a partnership to take over its business and to admit to the partnership with a 25% interest therein plaintiff, Fannie Kirshon, and the plaintiff, Leo Kirshon, "if he should marry her" and if he should not, "such husband as she might lawfully marry". These two plaintiffs intermarried August 19, 1937. The defendant denies that Fannie Kirshon owned a 25% interest in the corporation. He avers that she simply executed the Articles of Incorporation for the sole purpose of complying with the Business Corporation Law of Pennsylvania, which provides for three incorporators. He says that he paid in all the capital of $10,000. with which the corporation began business and that although a certificate for 49 shares of stock was made out in her [Fannie Kirshon] name the stock was never delivered to her but remained in the possession of the respondent. The respondent also denies the allegation as to any oral agreement between the two plaintiffs and the respondent to dissolve

the corporation and to form a partnership to take over its business and to admit to the partnership with a 25% interest therein the two plaintiffs if they should marry. It is also denied that Fannie Kirshon ever surrendered any stock to the corporation, since she owned no stock. The case was heard by Judge William R. Lewis, but he retired from the bench before he disposed of it. The matter was then referred to former Judge Albert E. Swoyer as Referee. He reported on the record made before Judge Lewis: "The plaintiffs have failed to meet the burden of proving a partnership and the Chancellor finds as a fact, that there was no partnership, and no partnership was ever organized between the plaintiffs and the defendant to conduct the business of the Bell Electric Co. of Pennsylvania." (He also found that the defendant did not at any time agree with the plaintiff Leo Kirshon or Fannie Kirshon to dissolve a corporation or form a partnership to take over the business and to admit to the partnership with a 25% interest therein, the plaintiff Fannie Kirshon and the plaintiff, Leo Kirshon.) The Referee made numerous findings of fact and stated several conclusions of law. The plaintiffs filed thirty-one exceptions to these findings and conclusions of law. The court did not, as Rule 71 requires, "sustain or dismiss" the exceptions "in whole or in part". The Court ignored the exceptions and on its own part made seven findings of fact. The basic statement of the court below is found in the court's "discussion", and it reads as follows: "Whether there was an actual legal partnership formed is not the exact question in this case. The plaintiffs were given a one-fourth interest in a business and are entitled to an account when all evidence of their ownership is taken from them and they are put out of their property."

While the court below incorrectly stated the issue in this case, the Referee showed a firm grasp of the issue when he said: ". . . the burden of proving that a partnership was formed (as distinct from proving that there

was an agreement to form a partnership) and the nature of that partnership is upon the plaintiffs, and that if they fail in so doing then their case must fail. The distinction to be noted is that this action is for the dissolution of a partnership and an accounting of the profits thereof; therefore, whatever might be the rights of the plaintiffs in an action for specific performance of a contract to form a partnership, if such a contract existed, or for damages for breach of the said contract, such rights cannot be adjudicated in the case before us."

The opinion of the court below does not enlighten us as to how it reached the conclusion that the referee ought to be reversed. The opinion refers to Exhibit No. 1 and says: "It was well substantiated by independent testimony" but just *what* the court thinks this paper proved, in other words what *its legal effect* was, does not appear. This paper was dated August 20, 1937, just one day after the marriage of the two plaintiffs. It reads as follows: "I, Harry Friedman, owner of the Bell Electric Company of Pennsylvania, hereby agree to transfer 25% (Twenty five) per cent, of the Bell Electric Company stock; for the sum of one ($1.00) Dollar and other considerations, to my daughter Fannie Friedman and her future husband whoever he may be, being married to him lawfully, both in the Court House and in the Jewish tradition, which he is to share with her thereafter. Signed (Written) Harry Friedman (Typewritten) Owner (Written) Bell Elec Co." It will be noted that this paper refers to Bell Electric Company *stock,* obviously referring to the corporation of that name. It furnishes no proof whatever of the existence of the partnership pleaded. At its maximum it would only tend to prove that the defendant "agreed to transfer 25% of the Bell Electric Company stock, for the sum of $1. and other considerations", to his daughter Fannie and her future husband "whoever he may be". (Fannie already had a husband twenty-four hours before this paper was signed.) This paper certainly does not prove the

existence of any partnership. If this paper constitutes a valid contract (and its integrity *is challenged* by the defendant) it gives the plaintiff only an action for its breach, but it does not support a bill filed by one partner for an accounting of an alleged partnership, and based solely on an alleged *oral agreement* "to form a partnership". In *Bowman v. Gum, Inc.*, 321 Pa. 516, 184 A. 258, this court speaking through Mr. Justice LINN, said (525) : "The pleadings determine the relief that may be afforded : 'Neither allegations without proof nor proof without allegations, nor allegations and proof which do not substantially correspond, will entitle complainant to relief, unless the defect be remedied by amendment' : *Spangler Brewing Co. v. McHenry*, 242 Pa. 522, 528, 89 A. 665."

The court below in its fourth finding of fact says : "It is further admitted that the defendant gave the name of a son-in-law as a one-fourth owner of the business both in his income tax reports and in his statement to Dun & Bradstreet's representative." *This finding as to the alleged statement to the latter is not supported by any testimony.* Vincent G. Williams, who has been a representative of Dun & Bradstreet since 1934, testified that he made a report on the Bell Electric Company, after consulting with Harry Friedman, and that the latter informed him that the business was conducted as a corporation and said it would later be a partnership between him and his daughter, but he did not say anything about his *son-in-law* becoming a future partner. That conversation was on May 20, 1937. While this witness was on the stand and was being interrogated as to statements made by Harry Friedman in 1939 and 1940 as to who was the owner of the business, counsel for plaintiffs said : "We admit that Harry Friedman in 1938 and 1939 reported to Dun & Bradstreet that he was the owner of the business."

It was also shown that for the years 1938, 1939 and 1940, Harry Friedman, the defendant, filed an *individual*

income tax return in the name of Harry Friedman, trading as the Bell Electric Company. The only year for which a partnership income tax return was filed on behalf of the Bell Electric Company was for the year 1937. That return did not show that plaintiff Fannie Kirshon was a partner, but it did show that Leo Kirshon, her husband, was a partner. The defendant's explanation of this return was that he signed the return in blank and the auditor filled in it. The auditor testified that his instructions from the defendant as to the 1937 income tax return were that Kirshon "was to receive 25% of the profits for that particular year". The auditor was asked, "Did he specify whether or not it should be a partnership return?", and he answered, "No, he did not." The auditor testified further that Friedman "never told him it was a partnership" but that the auditor "drew a partnership form" for the income tax return "after Friedman told him that he was giving 25% of the profits to Kirshon this year". This court said in *Frazier v. Mansfield*, 305 Pa. 359, 361, 157 A. 798, that a share of a firm's profits as compensation for services does not make the recipient a partner; nor does the advancement of a share of the capital make one a partner. To the same effect is the case of *Kaufmann v. Kaufmann*, 222 Pa. 58, 68, 70 A. 956, where this court held that a mere participation in the profits of a business will not make the parties partners inter sese, whatever it may do to third persons, unless they so intended. In the more recent case of *Kingsley Clothing Mfg. Co. v. Jacobs*, 344 Pa. 551, 555, 26 A. 2d 315, Mr. Justice STERN, speaking for this court, said: ". . . the fact that one is entitled by agreement to a share of the profits of an enterprise does not necessarily constitute him a partner: *DeHaven's Est.*, 248 Pa. 271, 93 A. 1013; *Comstock v. Thompson*, 286 Pa. 457, 460, 133 A. 638, 639." There was no partnership return filed for the Bell Electric Company for any other year except 1937, as was shown by the certificate of the Collector of Internal Revenue.

178

For all the other years the entire profits of the Bell Electric Company were accounted for by the defendant in an individual return. As already stated, the instruction to the auditor who made out the 1937 income tax return was that Kirshon was to receive 25% of the *profits* made during that year. According to the defendant and the auditor no mention was made of the word "partnership". The defendant signed the 1937 income tax return but he claims that it was in blank when he signed it.

The burden of proving the partnership pleaded was on the plaintiffs. We have said in many cases: "The burden of proof resting upon plaintiffs in civil actions cannot be met by conjectures. The phrase 'burden of proof' means exactly what it says. . . In a civil case the evidence of facts and circumstances on which plaintiff relies and the inferences logically deducible therefrom, must so preponderate in favor of the basic proposition he is seeking to establish as to exclude any equally well supported belief in any inconsistent proposition." See *Waldron v. Metropolitan Life Ins. Co.,* 347 Pa. 257. In *Dunham v. Loverock,* 158 Pa. 197, 202, 27 A. 990, this court said: "It is elementary law that a partnership is created only by a contract express or implied. The burden of showing its existence is on him who alleges it, and this burden the court below rightly held had not been lifted by the plaintiff." 40 *Am. Jurisprudence,* p. 186, Sec. 82, says: "It seems that less proof is requisite to establish a partnership in actions against alleged partners than is necessary in actions *between the parties themselves.*" (Italics supplied.) Our Uniform Partnership Act of March 26, 1915, P. L. 18, Part 2, Sec. 7 (59 P. S. 12), provides: "In determining whether a partnership exists, these rules shall apply: (1) . . . (2) . . . (3) The sharing of gross returns * does

---

* In the instant case there was no sharing of gross returns; in 1937 there may have been, according to the income tax return for that year, some sharing by *one* of the plaintiffs in the net returns of the business. There was no such sharing in subsequent years.

not of itself establish a partnership . . . (4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment: (a) . . . (b) As wages of an employee . . ." In *Irwin et al. v. Bidwell et al.*, 72 Pa. 244, we held that an agreement to become partners at a future time will not make the parties partners. In *Beaver v. Slane*, 271 Pa. 317, 321, 114 A. 509, this court said: "There was a failure to establish any such contract [partnership], though conflict appears in the testimony; the most that can be said is that the parties contemplated the formation of some partnership in the future, but the mere intention to so proceed, does not create the relationship." In *Coens v. Marousis*, 275 Pa. 478, 481, 119 A. 549, we said: "A mere agreement to form one [a partnership] does not of itself create a partnership; . . ."

In the light of the foregoing well-established principles, it is clear that no supported findings of fact by the court below are sufficient to establish the existence of the partnership pleaded. Not only is this the fact, but the court also·apparently ignored all the evidence tending to prove the *non*-existence of the partnership. There was much competent evidence of the defendant's *sole* ownership of this business and of the fact that the plaintiff Leo Kirshon was only an *employee*. For example, Kirshon testified that there was never any account between him and Friedman as partners. The signed financial statements of the Bell Electric Company issued through Dun & Bradstreet's agency were all signed by "Harry Friedman, owner" or "proprietor". Kirshon testified that the lease for the premises occupied by the Bell Electric Company was with "Harry Friedman, trading as Bell Electric Company". This lease was executed several months *after* the alleged partnership was created. The stock and fixtures were insured in the name just quoted. Kirshon admitted that he never stated to

Dun & Bradstreet's agency that *he* was a partner in that business. Defendant offered in evidence a certificate from the Workmen's Compensation Board showing an agreement for compensation for liability in the case of Leo Kirshon v. The Bell Electric Company of Pennsylvania, showing that the agreement was signed by Leo Kirshon as "employee" and by Harry Friedman as "employer". It was also shown that for the years 1938, 1939 and 1940 Harry Friedman, the defendant, filed an individual income tax return in the name of Harry Friedman, trading as the Bell Electric Company. This court in *Kingsley Clothing Mfg. Co. v. Jacobs*, 344 Pa. 551, at p. 555, 26 A. 2d 315, at p. 317, said: "As between the parties themselves partnership is a matter of intention, and where they expressly declare that they are not partners this settles the question, for, whatever their obligations may be as to third persons, the law permits them to agree upon their legal status and relationship inter se: *Kaufmann v. Kaufmann*, 222 Pa. 58, 67, 68, 70 A. 956, 959." All the workmen's compensation insurance covering this business was taken out in the name of Harry Friedman, trading as the Bell Electric Company of Pennsylvania.

As already pointed out, the court in banc did not either "sustain or dismiss" the exceptions filed to the Referee's decree, "in whole or in part", as required by Equity Rule No. 71, and the court also failed to put upon the record "its reason" for disregarding the findings of the Referee. In *Belmont Laboratories, Inc. v. Heist et al.*, 300 Pa. 542, 151 A. 15, this court speaking through Justice WALLING said: "The court in banc can properly disregard such findings [of a chancellor] only in a clear case and *then by putting upon record its reason for so doing*". (Italics supplied.) "In the instant case the court in banc gives reasons for its action", he said, "but they are not convincing, and, as neither that court nor this saw or heard the witnesses, we are in as good a position as it to weigh the evidence", (citing

cases). "Furthermore, under the former practice, the court could only reverse the master's findings of the facts in a clear case. See *Mirkil v. Morgan,* 134 Pa. 144; *Helb v. Hake,* 203 Pa. 626. . . . We have reached the conclusion that the action of the court in banc can not be sustained."

On account of the court's breach of Equity Rule 71 and on account of its failure to put upon the record its reason for reversing the Referee, the decree will be reversed and the record remitted to the court below for further proceedings consistent with this opinion.

While we do not lay down any rule that in equity proceedings the trier of the facts must see and hear witnesses if they are available, we do say that that is the better practice to follow, for it is an elementary principle that in considering the credibility of witnesses their manner of testifying, their apparent candor, intelligence, personal interest and bias or lack of it, are to be considered in determining what weight shall be given to such testimony. In *Jones v. Motor Sales Co. et al.,* 322 Pa. 492, 496, 185 A. 809, Mr. Justice LINN, speaking for this court, and quoting from *Belmont Laboratories, Inc., v. Heist et al.,* supra, said: "The nature of the principal differences of fact between the chancellor and the court in banc, again compels us to call attention to the well settled rule that though it is the duty of the latter to review carefully such of the findings of fact of the former as have been made the subject of exceptions . . . yet great weight is to be given to those findings in cases where, as here, they depend, in large degree, on the credibility of witnesses whom he saw and heard, and whose testimony, for that reason, he is best able to weigh, . . . as the tone and manner of a witness not infrequently indicate whether or not he is telling the truth."

Our Equity Rule 67 provides for a "hearing upon bill and answer" in equity cases. It is at least unusual and anomalous to have "a hearing" without the fact-finding

tribunal *actually* hearing a single available witness. 70 C. J. p. 775, Sec. 952, says: "In determining the weight to be attached to the testimony of a witness it is proper to consider his appearance, general bearing, conduct on the stand, demeanor, manner of testifying, such as candor or frankness, or the clearness of his statements, and even the intonation of his voice. So the positiveness of the witness, as well as his uncertainty as to the facts as to which testimony is given, may be considered ; . . ." 28 R. C. L. p. 258, Sec. 243, says: "The mental condition of a witness as manifested by him on the witness stand almost invariably influences the jury as to the weight they will give his testimony. The manner in which a witness tells his story; the advantages he appears to have had for gaining accurate information on the subject; the accuracy and retentiveness of his memory; his capacity for consecutive narration of acts and events; his apparent frankness and intelligence, and numerous other considerations—all go to make up the sum total of credibility that the jury will give to the evidence of any particular witness." When a Referee or a Judge, instead of a jury, acts as a trier of the facts the principle just quoted is equally applicable. It is as important that *he* determine the credibility of witnesses as it is that a jury should do so when there is a jury trial. In *Mirkil v. Morgan,* 134 Pa. 144, 19 A. 628, Chief Justice PAXSON said: "In this case the master and the court below differed upon the facts. On the one hand, we have an elaborate discussion of the evidence by the master; on the other, a brief opinion by the learned judge, the substance of which is that the master found the facts against the weight of the evidence. Beyond this he has given us no aid in the consideration of the case. . . . Was the master also right upon his facts? Where the findings of the master are approved by the court, we have little difficulty. In such cases, clear error must be pointed out. It is not enough that there is a conflict of testimony. In such instances, the master is

in a better position than either the court below, or this court, to weigh the evidence and decide intelligently upon it. In this case the master was also examiner, and had the witnesses before him. He had the advantage of their manner and appearance to aid him in arriving at the truth." In the case before us neither the Referee nor Judge LEACH "had the advantage of their [i.e., the witnesses] manner and appearance to aid [either of them] in arriving at the truth".

The issue in this case is a narrow one, to wit, did the partnership pleaded exist? The issue is *not:* Did the defendant promise to transfer 25% of the Bell Electric Company stock to his daughter Fannie "and her future husband", for one dollar and other valuable considerations? Nor is the issue: Did the defendant agree, as the court below found, "to set up the young couple [the two plaintiffs] in a business?" If the defendant entered into an agreement with the plaintiffs to transfer to them a 25% interest in the stock of a corporation, or to "set them up in business" and if he violated that agreement, the plaintiffs would have an action against him for breach of contract. They would not have a right to an accounting of a partnership business.

This case should be retried and a real "hearing" should be had before the chancellor or other fact-finding tribunal; the proofs should conform to the pleadings, which make *the issue* in this case the *existence of a partnership* and not merely the intention to form one or to sell to the plaintiffs for one dollar and other valuable considerations certain stock in a corporation, or to "set them up in business"; no finding of fact should be made unless it is supported by evidence, and as Justice WALLING said in the Belmont Laboratories Case, supra, the court in banc should put "upon the record its reason" for its action.

The decree is reversed with a procedendo.