## Duvall v. Potter

*Richard C. Snyder*, for plaintiff.

*Harry C. James* and *Phillip J. Shettig*, for defendant.

WRIGHT, P. J., February 1, 1947.—This is an action to establish a partnership and secure an accounting.

### Pleadings and issues raised thereby

The pleadings consist of a bill of complaint, an answer containing new matter, a reply, an amended averment of new matter, and a reply to new matter as amended. The issues raised by the pleadings are: (1) Did plaintiff and defendant enter into a verbal agreement of partnership; (2) If so, has plaintiff conducted himself in such a manner as to be barred from equitable relief?

*Findings of fact*

1. Porter Duvall, plaintiff, is a resident of McConnellsburg, Fulton County, Pa., and prior to April 11, 1944, was working on a coal stripping job at Sandy Run, Bedford County, Pa.

2. George A. Potter, defendant, is a resident of Altoona, Blair County, Pa., and is a mining engineer.

3. Samuel S. Laucks, of Red Lion, York County, Pa., was the owner of two tracts of coal land situate in Broad Top Township, Bedford County, Pa., the first known as the Foster tract and the second known as the Lenore tract.

4. Prior to April 11, 1944, Potter was negotiating with Samuel S. Laucks relative to a lease or leases on said coal land.

5. On April 11, 1944, Potter contacted Duvall at the latter's place of employment, and there was a discussion between them about stripping coal on property owned by Mr. Laucks.

6. Duvall has failed to establish that he and Potter entered into an agreement of partnership.

7. The parties did enter into an agreement by virtue of which Duvall was to secure coal stripping equipment and to act as superintendent of the operation and to be compensated for his services by the receipt of one half of the profits.

8. Potter secured from Laucks written leases for both the Foster and the Lenore tracts, in which leases Potter was the lessee. These leases were promptly exhibited by Potter to Duvall.

9. After waiting for 30 days for Duvall to procure stripping equipment, Potter arranged with John Bero to do the stripping.

10. Chester Horton sold the coal to truckers and collected the money and gave the money to Duvall at the end of each business day.

11. The money was deposited by Duvall in the Fulton County National Bank at McConnellsburg to the

credit of "George A. Potter Company by Porter Duvall", from which account expenses were paid and equal division of the profits made on checks signed by Duvall.

12. On or about October 6, 1944, Duvall secured a policy of workmen's compensation insurance in the name of the George A. Potter Company.

13. On or about November 14, 1944, an endorsement was attached to said policy setting forth the name of the employer to be Porter Duvall and George A. Potter, trading as the George A. Potter Company.

14. Duvall was an employe of Potter and not a partner.

### Discussion

Whether or not a partnership exists is a question of fact: Comstock v. Thompson, 286 Pa. 457, 460. Written articles of agreement are not necessary to prove a partnership; such a relationship may exist under a verbal contract: Mattei et al. v. Masci, 351 Pa. 93, 94. However, the equity court will not enforce an alleged contract of partnership unless it is complete and certain in all of its essential elements: Beaver v. Slane, 271 Pa. 317, 322. The receipt of a share of the profits of a business as compensation for services rendered does not make the recipient a partner: Frazier v. Mansfield et al., 305 Pa. 359, 361.

The difficulty with plaintiff's theory is that he has not sustained the burden of proof. His case rests almost entirely upon his own testimony. While he called several witnesses for the apparent purpose of corroboration, none of them proved of any assistance. In fact, the testimony of Mr. Brua definitely supports defendant's theory that plaintiff was his superintendent. That plaintiff hired some of the employes, that he managed certain features of the business, and that he deposited and checked out the receipts are facts equally consistent with either theory. The only docu-

mentary evidence which is helpful to plaintiff is the endorsement on the workmen's compensation insurance policy. However, this endorsement was not obtained for a period of seven months, and the court is not satisfied that defendant knew about the endorsement as opposed to the policy itself.

Plaintiff did not obtain a written agreement. He did not register the partnership under the Fictitious Names Act. No partnership income tax return was filed. Plaintiff actually proceeded to operate under written leases which, according to his theory, were wrongfully taken in defendant's individual name. Plaintiff's explanation is that when he complained that his name did not appear on the leases, defendant said "Don't you trust me?" It is apparent that plaintiff is asking the court to protect him when he failed to protect himself.

Counsel for plaintiff argues that, since plaintiff was to share in the profits of the business, the burden of proof is shifted to defendant. His contention is that the receipt by plaintiff of a share of the profits is prima facie evidence that plaintiff was a partner, and the burden of proving that there was no partnership is upon defendant. Reliance is placed upon the following statement from Kuss v. Guzy, 36 Luzerne 278, 279: "The statute provides that receipt of a share of the profits of a business is *prima facie* evidence of partnership. The allegations of the statement, therefore, shift the burden of proof to the defendant."

The Uniform Partnership Act of March 26, 1915, P. L. 18, provides inter alia as follows:

"Section 7. In determining whether a partnership exists, these rules shall apply: . . . .

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment: . . .

(b) As wages of an employe ; . ."

So far as we have been able to find, the effect of section 7(4) of the Partnership Act on the burden of proof has not been expressly declared by our appellate courts. Our consideration of the opinion in the cited case causes us to conclude that what the Luzerne County court had in mind was not *burden of proof* but *burden of coming forward with evidence*. As was said by Chief Justice Maxey in Zenner v. Goetz, 324 Pa. 432, 435:

"A defendant's duty of coming forward with evidence at certain stages of a trial is sometimes loosely referred to as 'burden of proof'. The 'burden of proof' rests throughout the trial on the party affirming facts in support of his case against a defendant, while 'the burden of coming forward with evidence' may shift from side to side during the progress of a trial."

We interpret the opinion of the chief justice in Kirshon et ux. v. Friedman, 349 Pa. 171, 178, to mean that the overall burden of proving the partnership pleaded still rests upon plaintiff. We expressly rule that the receipt by a plaintiff of a share of the profits of a business does not shift the burden of proof to defendant. It merely shifts to defendant the burden of coming forward with evidence.

Having found that plaintiff has failed to establish an agreement of partnership, it becomes unnecessary to determine the second issue raised by the pleadings, namely, the nature and effect of plaintiff's subsequent conduct.

### Conclusions of law

1. The receipt by a plaintiff of a share of the profits of a business does not make the recipient a partner, nor does it shift the burden of proof to defendant. It merely shifts to defendant the burden of coming forward with evidence.

2. Since the court has found that plaintiff was an employe of defendant and that no partnership was established, plaintiff is not entitled to an accounting in this action.

3. The bill must be dismissed at the cost of plaintiff.